## Case No. 365.

### ANDERSON et al. v. TOMPKINS.

[1 Brock. 456;[1] 1 Amer. Lead. Cas. 429.]

Circuit Court, D. Virginia. June 12, 1820.

PARTNERSHIP — POWER TO BIND FIRM — ASSIGNMENT OF PROPERTY TO PAY FIRM DEBTS — ABSENT PARTNER — BOOK DEBTS NOT ASSIGNABLE.

1. One partner has a right to convey the partnership effects, (other than real estate) to the creditors of the firm, in payment of their debts, either to the creditors directly, or through the intervention of trustees, and if the transaction be bona fide, the deed will not be set aside, although the consent of the other partner was not obtained.

[Cited in Bohler v. Tappan, 1 Fed. 470.]
[See Harrison v. Sterry, 5 Cranch, (9 U. S.) 289.]

2. Where all the partners of a mercantile firm are present, they have a right to be consulted in giving a preference to particular creditors, but this necessity is dispensed with, if one of the partners is absent in a foreign country.

3. The doctrine that a partner cannot bind his copartner by a deed, does not apply in a case in which the property purported to be conveyed by the deed, is of such a description, that a title to it passes by the mere act of delivery. The mere circumstance of annexing a seal to the instrument of conveyance, in such a case, does not annul a transfer so consummated.

4. If real property is conveyed to a firm, or to partners in trust for a firm, the members of the firm are tenants in common, and neither party can convey more than his undivided interest in the subject.

5. An assignment by deed of partnership debts, which are assignable at law, executed by one of the partners only, though void at law, will be sustained in equity, if it appear that the assignment was made with the bona fide intention of securing the creditors of the firm.

6. The book debts of a merchant are not assignable at law, and a deed executed by one member of a mercantile firm, purporting to convey such debts, does not pass the legal title. At law, the assignment is only a power to collect, and appropriate the debts, which is revocable. So far as collections were made under it, before revocation, the title to the money is in the trustees named in the deed. Such a power to collect, is a contract that could not be enforced at law, but will be sustained in equity, and have preference to any subsequent assignment by the other partner, as the prior equity must prevail in a contest between mere equities.

In equity. The complainants, merchants and partners, subjects of the king of Great

[1] [Reported by John W. Brockenbrough, Esq.]

Britain, filed their bill in this court, alleging, that they were creditors of John Tompkins and Adam Murray, late partners in trade, residing in the city of Richmond, and state of Virginia, under the firm of Tompkins & Murray, to the amount of £715 13s. sterling: that on or about the 28th day of April, 1819, Adam Murray, one of the partners, embarked for Europe; and on the 8th day of May following, John Tompkins, the other partner, without (as was alleged) the knowledge or consent of Adam Murray, executed a deed, of that date, to Nicholas Anderson & Tompkins, citizens of Virginia, purporting to convey to them, not only all the partnership effects, real and personal, of Tompkins & Murray, but also the separate property of Adam Murray, upon trust; 1st, for the benefit of Sutherland, Colquhoun & Co. and Samuel Christian, all of them citizens of Virginia; and, 2dly, for the benefit of such of the creditors of Tompkins & Murray, resident within the United States, as should within sixty days, and of such of them, resident elsewhere, as should within six months from the date of the publication of the trust, by the trustees, exhibit their claims: that prior to the execution of this deed, Tompkins & Murray purchased several lots of ground in the city of Richmond, and certain tracts of land in the state of Virginia: that Adam Murray was proprietor, also, of another lot of ground in the city of Richmond, in his own right, of a share of a tract of land in the state of Kentucky, of a tract of land in Illinois, and of sundry other articles of household furniture, and other personal estate in Virginia: that subsequent to the execution of the said deed of trust, the partnership was dissolved, and after the dissolution, Adam Murray, who has never returned to Virginia, executed several deeds, bearing date the 10th of November, 1819, conveying all his moiety of the partnership effects, both real and personal, of Tompkins & Murray, and the whole of his own individual property, in Virginia, to James Dunlop, of London, in trust for the benefit, 1st, of James and John Dunlop, to secure a debt due from the firm of Tompkins & Murray; 2dly, in satisfaction of a debt due from the same firm to Leslie & M'Indoe; and, 3dly, to secure the debt due to the complainants, Anderson & Wilkins. This suit was instituted for the twofold purpose of establishing the deed of the 10th of November, 1819, executed in England, by Adam Murray, and to set aside the deed of the 8th of May, 1819, executed by John Tompkins. The validity of the last mentioned deed was contested, as well as to the complainants, and the other creditors of Tompkins & Murray, who failed to exhibit their claims within the time prescribed therein, as to Adam Murray, on several grounds: 1st, it was contended, that during the existence of the firm, Tompkins could not, without authority from Murray, dispose of the partnership effects,

or any part thereof, by deed: 2dly, that the deed was void, because it gave a preference to Colquhoun & Co. and Christian, to all other creditors, without consulting with Murray: 3dly, that it was void, because it purported to convey the separate property of Murray, over which Tompkins had no control.

MARSHALL, Circuit Justice. This suit is brought to establish a deed, made by Adam Murray, a partner of the house of Tompkins & Murray, in November 1819, while in England, conveying his moiety of the property of that house, to certain creditors of the firm. On the 29th of April, 1819, Murray had embarked for England, leaving all the effects of the company in the hands of John Tompkins, the partner remaining in this country, who continued, for a short time, to conduct the business of the concern. The pressure of their affairs was such, that in May, the house stopped payment, and Tompkins, for himself and his partner, conveyed all the effects of the company, and also the separate property of himself and partner, to trustees for the payment, first, of certain creditors named in the deed, and then of those who should bring in their claims, the American creditors within sixty days, the foreign creditors within six months. As the deed under which the plaintiffs claim, can operate on that property only, which is not conveyed by the first, it will be proper, first, to inquire into the legal extent of the deed made by Tompkins.

That deed, as has been already stated, purports to convey the whole property of the concern, and the private property of the partners. That property, consisted of the effects of the partnership for sale, of real property, and of debts. I shall consider the deed in its application to each of these subjects.

First.—The goods in possession for sale. The convenience of trade requires, that each acting partner should have the entire control and disposition of this subject. It would destroy copartnerships entirely, if the co-operation of all the partners were necessary to dispose of a yard of cloth. It is, therefore, laid down, in all the books which treat on commercial transactions, that with respect to all articles to be sold, for the benefit of the concern, each partner, though the others be within reach, has, in the course of trade, an absolute right to dispose of the whole. "Each," says Watson, "has a power to dispose of the whole of the partnership effects." This is a general rule, resulting from the nature of the estate, and from the objects for which men associate in trade. They are joint tenants, without the right of survivorship, they are seized per mi et per tout, and they associate together, for objects which require that the whole powers of the partnership should reside in each partner, who is present and acting. These general doctrines are universal, and have not been controvert-

ed in this case; but it is contended, that they do not authorize the deed made by Tompkins, because, 1st. This is not an act in the course of trade, but is a disposition of the whole subject, and a dissolution of the partnership.

2d. It is a preference to particular creditors, in making which, Murray ought to be consulted.

3d. It is by deed. It will be readily conceded, that a fraudulent sale, whether made by deed or otherwise, would pass nothing to a vendee concerned in the fraud. But, with this exception, I feel much difficulty in setting any other limits to the power of a partner, in disposing of the effects of the company, purchased for sale. He may sell a yard, a piece, a bale, or any number of bales. He may sell the whole of any article, or of any number of articles. This power would certainly not be exercised in the presence of a partner, without consulting him; and if it were so exercised, slight circumstances would be sufficient to render the transaction suspicious, and, perhaps, to fix on it the imputation of fraud. In this respect, every case must depend on its own circumstances. But with respect to the power, in a case perfectly fair, I can perceive no ground, on which it is to be questioned. But this power, it is said, is limited to the course of trade. What is understood by the course of trade? Is it that which is actually done every day, or is it that which may be done, whenever the occasion for doing it presents itself?

There are small traders who scarcely ever, in practice, sell a piece of cloth uncut, or a cask of spirits. But may not a partner in such a store, sell a piece of cloth, or a cask of spirits? His power extends to the sale of the article, and the course of trade does not limit him as to quantity. So with respect to larger concerns. By the course of trade, is understood, dealing in an article in which the company is accustomed to deal; and dealing in that article for the company. Tompkins & Murray sold goods. A sale of goods was in the course of their trade, and within the power of either partner. A fair sale, then, of all or of a part of the goods, was within the power vested in a partner. This reasoning applies with increased force, when we consider the situation of these partners. The one was on a voyage to Europe, the other in possession of all the partnership effects for sale. The absent partner could have no agency in the sale of them. He could not be consulted. He could not give an opinion. In leaving the country, he must have intended to confide all its business to the partner who remained, for the purpose of transacting it. Had this, then, been a sale for money, or on credit, no person, I think, could have doubted its obligation. I can perceive no distinction in law, in reason, or in justice, between such a sale and the transaction which has taken place. A merchant may rightfully sell to his creditor, as well as for money. He may give goods in payment of a debt. If he may thus pay a small creditor, he may thus pay a large one. The quantum of debt, or of goods sold, cannot alter the right. Neither does it, as I conceive, affect the power, that these goods were conveyed to trustees to be sold by them. The mode of sale must, I think, depend on circumstances. Should goods be delivered to trustees, for sale, without necessity, the transaction would be examined with scrutinizing eyes, and might, under some circumstances, be impeached. But if the necessity be apparent, if the act is justified by its motives, if the mode of sale be such as the circumstances require, I cannot say, that the partner has exceeded his power. This is denominated a destruction of the partnership subject, and a dissolution of the partnership. But how is it a destruction of the subject? Can this appellation be bestowed on the application of the joint property, to the payment of the debts of the company? How is it a dissolution of the partnership? A partnership, is an association to carry on business jointly. This association may be formed for the future, before any goods are acquired. It may continue after the whole of a particular purchase has been sold. But either partner had a right to dissolve this partnership. The act, however, of applying the means of carrying on their business to the payment of their debts, might suspend the operations of the company, but did not dissolve the contract under which their operations were to be conducted.

Second.—It is said that Murray had a right to be consulted, on giving a preference to creditors. It is true, Murray had a right to be consulted. Had he been present, he ought to have been consulted. The act ought to have been, and probably would have been, a joint act. But Murray was not present. He had left the country, and could not be consulted. He had, by leaving the country, confided everything which respected their joint business to Tompkins; who was under the necessity of acting alone.

Third.—It is said, this transfer of property is by a deed, and that one partner has no right to bind another by deed. For this a case is cited, which I believe has never been questioned in England, or in this country. Harrison v. Jackson, 7 Durn. & E. [Term R.] 207.

I am not, and never have been, satisfied with the extent to which this doctrine has been carried. The particular point decided in it, is certainly to be sustained on technical reasoning, and perhaps ought not to be controverted. I do not mean to controvert it. That was an action of covenant on a deed; and if the instrument was not the deed of the defendants, the action could not be sustained. It was decided not to be the deed of the defendants, and I submit to the

decision. No action can be sustained against the partner, who has not executed the instrument, on the deed of his copartner. No action can be sustained against the partner, which rests on the validity of such a deed, as to the person who has not executed it. This principle is settled. But I cannot admit its application in a case where the property may be transferred by delivery, under a parol contract. Where the right of sale is absolute, and the change of property is consummated by delivery, I cannot admit that a sale, so consummated, is annulled by the circumstance that it is attested by, or that the trusts under which it is made, are described in a deed. No case goes thus far; and I think such a decision could not be sustained on principle.

The power of applying all the goods on hand for sale, to the payment of the partnership debts, is, I think, a power created by the partnership, and the exercise of it must be regulated by circumstances. In extraordinary cases, an extraordinary use of power must be made. What is called the course of trade, is not confined to the most usual way of doing business, in the usual state of things. In the absence of one of the partners, in a case of admitted and urgent necessity, the power to sell may be exercised by the partner, who is present, and who must act alone, in such manner as the case requires, provided it be exercised fairly. In this case, the fairness of the transaction is not impeached, and, certainly, upon its face, it is not impeachable.

So far, then, as respects the partnership effects which were delivered, I have never, from the first opening of the cause, entertained a moment's doubt.

The next subject to be considered is the real property comprehended in this deed. Real property, whether held in partnership, or otherwise, can be conveyed only by deed, executed in the manner prescribed by statute. This deed can convey no more title at law, than is in the person who executed it. Property conveyed to a firm, or to partners in trust for a firm, is held by them as tenants in common, and neither party can convey more than his undivided interest.[2] In this case, where the legal estate was in Tompkins, the whole property passes at law, by his deed. Where the legal estate was in Murray, the whole property passes at law, by his deed. Where the legal estate was in Tompkins & Murray, the property passes in moieties, by their several deeds. I do not think that the superior equity of either party is such, as to control the legal estate, or the disposition made by law of the subject.

Where the legal estate is in trustees, for the use of Tompkins & Murray, the title does not pass at law by either deed, and I have great-

ly doubted, whether the first deed ought not to be preferred. I have, however, come to the opinion, that this trust ought to follow the nature of the estate at law, and where the trustees have not conveyed before the subsequent deed was executed, that the title to this property, likewise, should pass in moieties.

The last subject to be considered, is, the debts due to the partnership. The right of one of the partners to assign debts which are assignable at law, is admitted, provided that assignment be made in the usual way. The assignment, then, of these debts, is as valid a transaction as the sale of goods on hand, if it be not contaminated by the seal. I should not suppose, on the principle settled in 7 Durn. & E. [Term R.] that an action could be maintained on this assignment. But I am not satisfied that it does not pass the assignable paper, which the partner had a legal right to assign. I rather think it does.

A question of more difficulty respects the book debts. This is a part of the subject on which I have entertained, and still entertain, great doubts. The deed does not pass these debts at law. They are not assignable at law, but they are assignable in equity, and a court of equity sustains their assignment. At law, the assignment is only a power to collect and appropriate; and that power is revocable. So far as collections were made under it, before it was revoked, I can have no doubt, that the money collected was in the trustees. With respect to debts not collected, I have felt great doubts. I consider the power to collect, as a contract, which could not be enforced at law. But as Mr. Murray could not convey this property at law, and could only convey it in equity, I have supposed, that the prior equity must be sustained, and that these debts, also, pass by the deed of Tompkins.

The opinion of the court, then is, that the plaintiffs have a right to a decree for a sale of all the real property contained in the deed made by Adam Murray, the legal title to which was in Adam Murray, and to a moiety of the real property, the title to which, was in Tompkins & Murray, or in trustees for their benefit; and that the residue of the property passes to the trustees, in the deed executed by John Tompkins.

NOTE. [from original report.] During the continuance of a mercantile firm, one of the partners, though he is competent to bind, and does bind his own interest in the firm, cannot bind his copartners, by a submission to arbitration. Karthaus v. Ferrer, 1 Pet. [26 U. S.] 222. But see Buchanan v. Curry, 19 Johns. 137. The question, how far one partner may bind his copartner, by an instrument under seal, in equity, came under consideration in Sale v. Dishman's Ex'rs, 3 Leigh, 548. "Berryman & Dishman" were partners in trade, though it was proved, in fact, that Dishman had only permitted his name to be used in the firm, to give Berryman credit, and Dishman had advanced money to Berryman, which Dishman was to receive back, with interest, without re-

---

[2] This principle is laid down in Deloney v. Hutcheson, 2 Rand. [Va.] 183.

gard to the profit or loss of the trade. Berryman covenanted with Sale, for the purchase of corn, for "Berryman & Dishman," and Berryman, alone, signed and sealed the covenant, in the name of "Berryman & Dishman;" but it was clear, that the firm was looked to as debtors for the amount. Tucker, President, said: "The contract, thus signed, and, (by mistake of received principles of law, which deny the right of one partner, to bind another at law by a seal,) being sealed also, was, nevertheless, binding in equity upon both parties." "In this case, then, the partners were clearly bound by the original contract." Decree accordingly.