Carr, J.

Edward M' Cullough and John P. Gillespie were merchants and traders, carrying on merchandise at Clarksburg, Virginia, under the firm of McCullough Sf Gillespie. The concern seems to have been wholly under the management of M' Cullough ; Gillespie being a resident of Pennsylvania. On the 2d of October 1833, McCullough, having become much indebted, both in his individual capacity and for the firm, executed a deed to trustees, conveying all his private property and all the property of the firm, for the payment, 1st. of a list of creditors, in succession; and 2dly, of certain other creditors, ratably. The list of creditors to be first paid is *425 made up indiscriminately of private -and social creditors ; and so is the list of those to be paid ratably. The property conveyed is indiscriminately thrown in, with- . c , 1 r , 1 T out any separation oí the one class irom the other. Indeed it does not appear from the face of the deed, that there is any partnership; the whole, 'wears the aspect of an Individual securing his individual debts ; and he executes it, not for the firm, but simply as the deed of Edward M’Cullough. At the date of this deed, were suits pending both against the firm and against M’Cullough individually; and at the October term 1833 of the superiour court for the county of Harrison, he was (at the suit of creditors of both classes) surrendered by his bail, confessed judgments, and was prayed in execution. He remained in jail till October 1834, when he was discharged by the jailor, the creditors refusing to pay the jail fees. In November 1833, Sommerville, a judgment creditor of the firm, standing in the second class in the deed of trust, filed,a bill in the same superiour court, praying to take the trust fund out of the hands of the trustees, upon certain charges against them, and that the court would carry'the said deed into execution; praying also, that the absent partner might be proceeded against, and his interest in the firm condemned .to pay the debt of the plaintiff. The judge received the bill, and granted the restraining order prayed for. In May 1834, M’Cullough answered, averring the honesty of his purpose in executing the deed, and expressing his perfect willingness that the. court should, during its present term, make an order for selling the trust fund, on such terms as should be most for the interest of the creditors; giving to each the preference given in the deed of trust. At the same term, the creditors generally, who are named in the deed, having obtained judgments on the law side of the court, prayed, byr their petitions, to be made parties to the suit, and let in to their proportion of the fund; and some who *426 had not yet gotten judgments, and others who were not named in the deed, preferred the same prayer, and were all made parties. At the same term, the court ordered a sale of the trust fund; the cause having been previously set for hearing, the absent defendant properly proceeded against, and the bill taken for confessed against him and the trustees. In May 183-5, Shaw, Tiffany fy Co. were permitted, on their petition, to make themselves parties; and their petition states that they obtained a judgment against McCullough in October 1833, for 116 dollars 10 cents with interest and costs, and that he was prayed in execution, and discharged for failure to pay prison fees, in October 1834. They state his deed to secure certain creditors, and that said deed had never been recorded in Lewis county, where the lands conveyed by it were situated ; and they (not being of the number of favoured creditors) pray that their judgment may be satisfied out of the proceeds of the Lewis land: the land having been then sold, and the proceeds in the hands of the court. These are the only parties who impugn the deed, and claim in opposition to it. A reference of the claims of the creditors was ordered, and a report made, which has not been excepted to: and finally, on the hearing, the court set aside the deed altogether, as being fraudulent and void, and decreed that the fund be distributed among the creditors ratably, the social creditors being confined to the social subject, and the individual creditors to the individual subject; and that if there should be a surplus of either fund, it should go to the creditors of the other. From this decree the defendant M’ Cullough and seven of the creditors have appealed.
The first question is, was the deed fraudulent, and therefore properly set aside ? If it was, the preference it gives to favoured creditors would fall along with it: if uot, that preference must stand, and govern the court in the distribution of the fund. For it is unquestionable *427 law, that a debtor in failing circumstances may prefer one creditor, or one set of creditors, to another; nor is 'his right to do so, at all weakened’ or impugned by the maxim that equality is equity. This maxim is justly a favourite one in the courts of equity, in the cases to which it applies ; but cannot be permitted to interfere with the right which a debtor has (where there is no existing lien) to secure this or that creditor, or class of creditors, in preference to others.- Such preferences are forbidden by the bankrupt system, and the spirit of that system is pretty strongly infused into some of the english decisions; but yet even in England, the right of the debtor to make such preferences is, in general, clearly admitted. I will cite a few cases to shew this. In Small v. Oudley, 2 P. Wms. 427. an ^assignment was made to a particular creditor, to secure money lent by him to the trader, and this but the day before the act of bankruptcy was committed. The master of the rolls said, “ There may be just reason for a sinking trader to give a preference to one creditor before another; to one that has been a faithful friend, and for a just debt lent him in extremity, when the rest of his debts might be due from him as a dealer in trade, wherein his creditors may have been gainers; whereas the other may be not only a just debt, but all that such creditor has in the world, to subsist on : in this case, and so circumstanced, the trader honestly may, nay ought, to give the preference.” So in Cock v. Goodfellow, 10 Mod. 489. a mother made an assignment to secure the fortunes of her children, given by the will of her husband, and placed in her hands as guardian ; and lord chancellor Parleer sustained it against the assignees of bankruptcy, though made but a short time previous to the act of bankruptcy. In answering some of the objections to the deed, he says, “ The objection against it because made so near the act of bankruptcy, is a very frivolous one; for the deeds meant by the statute are deeds made to *428 defraud creditors, whereas this was a deed made to secure a just debt. But it is objected that this deed is made to give an undue preference to children. I know not what law or reason there is to favour this objection. Any body may make his creditor executor, and then the law gives him a preference: not only so, but the law allows the executor to give any other creditor in equal degree a preference. A man who knows he must be a bankrupt, may by law pay off any of his creditors ; and this power, as it may be abused, so on the other hand may be very properly exercised. There may be particular obligations in point of gratitude,” &c. This doctrine of the courts of equity is also sanctioned by courts of law. In Estwick v. Caillaud, 5 T. R. 424. lord Kenyon says, “It is neither illegal nor immoral, to prefer one set of creditors to another.” In Nunn v. Wilsmore, 8 T. R. 528. the same judge says, “ Putting the bankrupt laws out of the case, a debtor may assign all his effects for the benefit of particular creditors.” I refer also to the case of Murray v. Riggs, 15 Johns. Rep. 571. reversing the decree of chancellor Kent (see Riggs v. Murray, 2 Johns. Ch. Rep. 565.) in which Thompson, C. J. reviews the cases upon this subject, and concludes that “ it is a settled and unshaken principle, both at law and in equity, that a failing debtor has a. just, legal and moral right to prefer, in payment, one creditor or set of creditors to another.”
Was this deed fraudulent P There is no evidence in the record to establish the fact; nothing to shew an intention to withdraw the effects of the firm from the creditors, or by any covin or collusion to disappoint their claims. On the contrary, the whole property of every kind and description, not only of-the firm but of the individual partner M’Cullough, is conveyed ; thus stripping himself and the firm (so far as the grantor could) of every atom of property, and subjecting it to the payment of the creditors named. And when the bill is *429 filed to take this fund from the trustees, and put it under the guardianship of the court, to be administered by the court, he promptly answers, assenting to the measure, anil praying that the court would forthwith order a sale of the whole subject: stipulating only that the proceeds shall be applied to the favoured creditors. This surely evinces that there was no fraud in fact, either perpetrated or intended. But it is said that there is fraud in law, — fraud in the attempt by one partner convey all the property of the firm, and to devote this property to the payment of specified creditors, without giving his copartner any voice in the matter; and moreover in jumbling together ihc separate and social funds, and directing the separate and social creditors to be indiscriminately paid according to the list. Let us look at these objections in their order. 1st. One partner undertakes to convey the partnership .property by deed. Suppose we admit that this deed is inefficacious against the other partners; this surely does not shew that it is fraudulent and void : for the same rule which says that one partner’ cannot bind another by deed (Gow on Partnership, 75. 76.) lays it down that the deed will be binding on the partner executing it; which it could not be, if fraudulent and void. But further: this deed, binding the grantor, conveys, for the purposes of the trust, at least all his individual property, and all his portion of the partnership funds. Thus, so much is secured for the payment of the creditors in the schedule. Would it be right to take from these this preference, fairly gained, and which the debtor had an undoubted right to give, because he has attempted to convey his copartner’s share likewise ? I cannot think so.
But this is said upon the supposition that the deed is ineffectual to convey the copartner’s interest. Is it really so? I question it exceedingly. Let it be remembered, 1. That the whole of the social fund is personal estate; the only land in the deed being the private pro *430 perty of Af ’ Cullough. 2. That Af ’ Cullough is the sole managing partner; Gillespie residing in another state, and never, that we hear of, meddling with the business. ° 3. 1 hat the purpose for which the effects are conveyed, *s th® payment of hoña fide creditors; of claims established beyond question. And though the deed does not J , ° devote the social fund exclusively to the social creditors, and the separate fund to the separate creditors, ¿[oes it comport with the mild and beneficent spirit of equity, for this cajuse (the result doubtless of ignorance and mistake) to annul the deed ? Is it not better to reform it, by throwing each class of creditors upon its own fund, and thus reach the real justice of the case, and probable intention of the grantor ? This is a power of frequent exercise in equity; one instance of which is in reforming joint bonds, and making them operate as joint and several; “ upon the reasonable presumption, that either through fraud, ignorance or inadvertence, the meaning of the parties has not been carried into effect.” I repeat, that considering that the social fund consists of personalty alone, that AT Cullough is sole manager, and that the deed conveys this fund to pay social debts, I am strongly inclined to believe that the deed is effectual to convey that whole fund. We know that personal property may be disposed of by parol contract and delivery, and that every partner of a firm has this power over every atom of social property, unless it be real estate. Suppose this partner had advertised that on such a day he would sell off the store goods, the bonds, and all the other property contained in this deed, and that the creditors of the firm should have liberty to purchase to the amount of their debts : would not such a sale as this have- been perfectly within his powers ? As much so, unquestionably, as it was to sell to a customer a yard of cloth. If, instead of this, he had given a parol authority, or one in writing under his hand only, to one or two agents to make sale *431 of the partnership stock of goods and other effects, all would agree that it was an act within his power; and this without consultation with his partner; for that partner having no part in the management, and not even a residence within the state, every tiling, ot necessity, was left to the discretion of M’Cullough. The ideas expressed upon this subject, though they appear to me sound and strong, I do not know that I should have liad the confidence to follow, with my own opinion to rely on. But I may truly say, non mens hie sermo. I have the support of one among the most eminent jurists and wisest men that our country can boast. 1 mean the late chief justice Marshall. The case of Anderson Wilkins v. Tompkins and others, decided by him in the circuit court of the United States for the state of Virginia, in June 1820, involved the very point before us. There was a mercantile firm doing business in the city of Richmond under the style of Tompkins Sf Murray. On the 29th of April 1819, Murray had embarked for England, leaving all the effects of the company in the hands of Tompkins, the partner remaining in this country, who continued for a short time to conduct the business of the concern. The pressure of their affairs was such, that in May the house stopped payment, and Tompkins, for himself and partner, conveyed all the effects of the company, and also the separate property of himself and partner, to trustees, for the payment, first, of certain creditors named in the deed, and then of those who should bring in their claims, — the american creditors within sixty days, and the foreign creditors within six months. In November 1819, Murray, the other partner, while in England, executed a deed conveying his moiety of the property of the house, to certain creditors of the firm. Here was a conflict of deeds; and as that of Tompkins was first in date, the last deed could only operate on that property which was not conveyed by the first. The question, then, was as to *432 the legal extent of Tomplcins’s deed. The chief justice decided that it conveyed the whole pártnership effects, except real estate. In his own lucid and strong man'ner, he shewed the general powers of partners over the effects of the firm, and the limitation to those powers. He then proceeded thus: “ It is said, this transfer of / property is by a deed, and that one partner has no right to bind another by deed. For this, a case is cited from ¶ qy ft which I believe has never been questioned in England or in this country. I am not, and never have been; satisfied with the extent to which this doctrine has been carried. The particular point decided in it, is certainly to be sustained on technical reasoning, and perhaps ought not to be controverted. I do not mean to controvert it. That was an action of covenant on a deed, and if the instrument was not the deed of the defendants, the action could not be sustained. It was decided not to be the deed of the defendants : and I submit to that decision. No action can be sustained against the partner who has not executed the instrument, on ’the deed of his copartner. No action can be sustained against the partner, which rests on the validity of such a deed as to the person who has not executed it. This principle is settled. But I cannot admit its application to a case where the property may be transferred by delivery under a parol contract. Where the right of sale is absolute, and the change of property is consummated by delivery, I cannot admit that a sale so consummated is annulled by the circumstance that it is attested by, or that the trusts under which it is made are described in, a deed. No case goes thus far, and I think such a decision could not be sustained on principle. The power of applying all the goods on hand for sale, to the payment of the partnership debts, is, I think, a power created by the partnership, and the exercise of it must be 'regulated by circumstances.”*
*433 Following lliis high authority, I conclude that a partner has a right to convey the social effects (save real estate) to trustees, to pay specified creditors of the firm, and , . ' . , , r J . , , this without the assent oi his copartner, where (as here) that copartner resides out of the state, and the grantor is sole manager of the concern. But it may be obiected, . ° J J that admitting this, the grantor has not, in our case, acted for the firm, but in his own name alone. True, fhis is the form which the scrivener has given to deed; but equity looks at the substance. The grantor has, in truth and in fact, conveyed all the social fund, and has designated a number of the social creditors to be paid, greater than that fund will satisfy.
There is still one more point to settle; that is, the claim of Shaio, Tiffany Sf Company. They are not named in the deed, and they claim in opposition to it, standing on the lien of their judgment (which is against McCullough individually) and contending that the deed, though valid between the parties, is, as to them, void, so far as relates to the Lewis land, because it was never recorded in the county court of Lewis. It is clear that the law declares (1 Rev. Code, ch. 99. § 1. pp. 361, 362.) that the deed shall not be good against a purchaser for valuable consideration, not having notice thereof, or any creditor, unless proved in the manner directed, and recorded in the court of the county, city or corporation in which the land or some part thereof lieth. It is equally clear that this deed, though recorded in Harrison county, has not been recorded in Lewis, where the land lies. But it is contended that none but judgment creditors who have preserved in full force the lien of their judgment, can take advantage of this defect in the *434 deed, and that the plaintiffs are not in that situation; because, having charged M’Cullough in execution, the lien of their judgment was merged in the ca. sa. lien; and though he was afterwards discharged for failure to pay the jail fees, this’did not remit the plaintiffs to the lien of their judgment, as they could take out no elegit or other execution, without first suing out a scire facias. It is true that after the discharge from execution by the jailor, no new execution could issue without a scire facias:* but is it true that this circumstance disabled the plaintiffs from coming into equity as judgment creditors, impeaching the deed, and getting satisfaction out of the proceeds of the land ? I think not. My opinion is, that the capacity to sue out a scire facias was sufficient for this. In Coleman v. Cocke, 6 Rand. 618. judge Green, delivering the opinion of a full court, says, “In all the cases upon the subject in the english court of chancery, it seems to have been the uniform course to consider a judgment, with the capacity to acquire the right to sue out an elegit, by scire facias or otherwise, as such a lien as gave jurisdiction to the court, whenever other circumstances justified its interposition. And in no case has there ever been any enquiry whether the judgment had been kept alive by taking out execution within the year, or otherwise, or whether it had been actually revived or not, in the case of the death of either party, unless from some cause (for instance, the great lapse of time) it was doubted whether the party could revive his capacity to sue out elegit, by reviving his judgment.” He refers to the case of Burroughs v. Elton, 11 Ves. 29. In that case lord Eldon says, “In general cases, as I understand the practice, judgment creditors go into the *435 master’s office; judgment creditors in general, who cannot stir at law without a scire facias, go and prove before the master with the creditors, without such step, but .... .. , . .. ... sustaining their proor by the ordinary course; giving in evidence the record of the judgment, and swearing that the debt is due.” Upon these authorities T am satisfied _ J that Shaw, Tiffany fy Company are properly before the court as judgment creditors; that the deed, so far as relates to the Lewis lands, is not good as to them ; that their debt must be satisfied out of that subject. With this exception, I am of opinion that the deed is valid: that the court should so reform it as to throw the social creditors upon the social fund, and the private creditors upon the private fund: that as to the social fund, it be distributed thus ; 1. pay the social creditors of the first class, to each his full debt, interest and costs (if sufficient for that purpose) in the order designated by the deed; 2. the residue, if any, to the creditors of the second class, pro rata: as to the private funds, 1. pay to Shaw, Tiffany &f Company their full debt, interest and costs; 2. to the creditors of the first class, to each in the order designafed by the deed, bis full debt, interest and costs (if sufficient for that purpose); and the surplus, if any, to the creditors of the second class, pro rata: and that the decree be reversed, and the cause sent back, with directions to be proceeded in according to the principles now declared.

 The above is taken from a manuscript copy, forming part of a series of cases decided by chief justice Marshall in the circuit *433 court of tlie United States for Virginia, and reported by mr. John, W. Brockenbrough. The work is about to be put to press, and will, I have no doubt, form a valuable addition to our stock of law learning’. Note by the judge. — The case is reported 1 Brock. Rep. 456. Note by reporter.

 A scire, facias to have a new execution against the goods and chattels, lands and tenements of the debtor, when discharged by the jailor for nonpayment of the jail fees by the creditor, is given by the act of February 12.1823, § 5. Supp. to Rev. Code. ch. 145. § 5. p. 204. — Note by the judge.