Price & Co. *v.* Alexander & Co.

*D. Rorer*, for appellants.

*Grimes & Starr* and *Morton*, for appellee.

--------•◇•--------

## PRICE & CO. *v.* ALEXANDER & CO.

Where A contracts with B for a share of the profits as such in any business transaction, he would be considered a partner as to third persons; but where he was to receive a share of the profits as compensation for services, as between themselves, they would not be considered partners.

An instrument under seal, executed by one partner and assented to by the other, will bind both as a firm.

The rule that one partner cannot bind his co-partner by sealed instruments, does not prevail, if the instrument would be equally valid without seal and within the scope of the partnership business.

Where special instructions asked, were included in those of a more general character, it was not error to refuse them.

### Error to Lee District Court.

*Opinion by* GREENE, J.   A. Alexander & Co. commenced this suit before a justice of the peace, and obtained a judgment against Joseph Price & Co. The case was taken to the district court by appeal, where Alexander & Co., again obtained a verdict and judgment for $75,00, the amount rendered before the justice.

In the court below, the plaintiffs offered certain articles of agreement made under seal by the respective firms of "A. Alexander & Co." and "Joseph Price & Co." on the 22nd of March, 1848. The agreement stipulated that Alexander & Co., should appropriate such portion of their wharf and warehouse in the city of Keokuk, as might be necessary to carry on the storage and forwarding business during the navigable season of 1848, and permit said Price & Co. to keep their wharf boat in front of said wharf, to be used by them in the storage and forwarding business, during the same period. The respective firms as parties to the agreement, were required to keep books and enter therein, the daily transactions of their respective operations in said business. They also agreed to conduct the "business at their respective places aforesaid, upon their own capital and at their own expense, and each to bear and sustain any and all losses that might accrue to them respectively in said business." It was also stipulated, in the language of the agreement, that they should "pay over to each other, mutually, after the date of this instrument one half of the clear nett profits realized by said parties, from the storage business respectively. It is understood, however, that any and all moneys received by said Price & Co., from storage during the time they may be at another landing, during high water, shall be used and disposed of by the said Price & Co. exclusively." It was then agreed, that if either party should fail to pay the money as specified, the other party might at his option, terminate the contract. Price & Co., agreed not to sell certain articles at wholesale, and also to pay Alexander & Co., twenty five dollars, as a bonus for all the business they might transact by the storage of emigrants' furniture, &c. To the admission of this agreement in evidence, the defendants interposed two objections: 1. Because the contract could not be effectual, as one partner could not bind another under seal, and as the agreement constituted a partnership wherein one partner could not sue another; and 2. Because the agreement was not signed by the in-

dividual parties to this suit, but by the respective firms, and therefore as one member of a firm cannot bind his co-partner under seal, the partners not signing the agreement were not bound. But the court overruling the objections, admitted the agreement in evidence. It is now contended, that this ruling of the court was erroneous; and this involves two questions for adjudication. 1. The character of the contract; and 2. The liabilities of the parties.

1. As a general rule, a partnership creates a community of interest, of duty, and of responsibility among the members of the firm. Such an association when not qualified or limited in its character, makes each member a participant in the profits, and a contributor to the losses resulting from the operations of the partnership. The authorities are uniform upon this point. But the books show a manifest distinction in partnerships, as existing between the parties themselves, and as existing between them and others. There may be a connection in business between A and B, in which they would be legally adjudged partners, in relation to others, but not so as between themselves. 6 S. & R. 333; 9 John. 489; 17 ib. 40; 6 Pick. 372; 12 Vt. 291; Gow. on Part. 11.

Ordinarily where a person contracts for a share of the profits, as such in any business enterprise, he has been considered a partner as to third persons, even if stipulated in the contract, that he should not be liable. This general rule is predicated upon principles of public policy in relation to commercial transactions, and upon the proposition, sanctioned by natural justice, that he who shares in the profits, ought also to contribute to the losses of the business, by paying creditors for furnishing means out of which those profits might have been realized. To this rule, however, there are many nice qualifications and exceptions, chiefly pertaining to profits acquired, not in the capacity of a partner, but in the character of an agent or otherwise, as compensation for labor or benefits furnished, not as a specific interest in the business, but under the stipulation that he should be rewarded by a given sum, in

proportion to the quantum of profits, without being cloth-
ed with the rights, powers and duties of a partner. But
if the arrangement secures to the party a specific interest
in the profits themselves as profits in contradistinction to
a stipulated portion of them as compensation, he incurs
the liabilities of a partner. In *Louis* v. *Morehall*, 12
Conn. 69, A entered into an agreement with B to furnish
a full supply of wool for his factory for two years; B was
to manufacture the wool into cloths, and A have 55 per
cent. of the nett proceeds, and B 45 per cent., they con-
tributing in the like proportions for warp, insurance, &c.,
in an action by C against A and B as partners, for work
in the factory, it was held that they were not liable as part-
ners. In *Ambler* v. *Bradley*, 6 Vt. 119, it was held that
where A owned a mill and agreed with B to work it for
half the gross earnings, they were not partners.

It was held in *Rice* v. *Austin*, 17 Mass. 197, that an
agreement between two persons to share in the profits of
an adventure or concern, does not necessarily constitute
them co-partners in that respect. See also upon this point,
*Baxter* v. *Rodman*, 3 Pick. 435; *Cutler* v. *Winsor*, 6 *ib.*
335; *Gallop* v. *Newman*, 7 Pick. 282; *Denny* v. *Cabot*,
6 Met. 82. *Bowman* v. *Bailey*, 10 Vt. 170, was a case
where one party furnished a boat, and the other sailed it
with an agreement to divide the gross profits, and it was
held that this did not constitute a partnership. See also;
*Dunham* v. *Rogers*, 1 Barr. 255; *Burkle* v. *Echart*, 1
Denio 337; *Clement* v. *Hadlock*, 13 N. H. 185; *Bradley*
v. *White*, 10 Met. 303; *Johnson* v. *Miller*, 16 Ohio 166;
Story on Part., § § 34, 35, 36.

Under the guidance of these authorities and those cited
by counsel for the defendants in error, the character of the
agreement in the present case cannot well be mistaken.
In that instrument, the leading ingredients of a partner-
ship are wanting. It was the manifest intention of the
parties, that the relation of partners should not subsist
between them. It is expressly stipulated, that the busi-
ness of each party should be conducted by themselves,

upon their own capital, at their own expense and subject
to their own losses.  Price & Co., for the privilege of hav-
ing their wharf boat at the wharf of Alexander and Co.,
and for half the receipts of their storage business, stipu-
late to pay them a sum equal to one half of their nett re-
ceipts from the storage and forwarding business, and also
a bonus of twenty five dollars, for all business they might
transact by the storage of emigrants' furniture, &c.  Un-
der the analogies of the foregoing cases, it may be well
doubted, whether this agreement would constitute a part-
nership as to third parties; but obviously, as between them-
selves, *inter se*, the relation of co-partners never was con-
templated.  The one party had no right, control or man-
agement over the business of the other, nor incurred eith-
er loss or liability.  In order to constitute a partnership
*inter se*, there must be a sharing in losses as well as in
profits.  In *Vanderburgh* v. *Hull*, 20 Wend. 70, such
were considered the indispensable requisites to any part-
nership; and in *Lawry* v. *Brooks*, 2 M'Cord 421, where
there was no mutual interest in the capital invested, and
no stipulation for mutual loss, it was not considered a co-
partnership.  Chancellor Walworth, in *Chase* v. *Barrett*,
4 Paige 160, decided "that to constitute a partnership as
between the parties themselves, there must be a joint own-
ership of the partnership funds, according to the intention
of the parties, and an agreement either expressed or im-
plied, to participate in the profits or losses of the business,
either rateably or in some other proportion to be fixed
upon by the co-partners."  Apply this test to the contract
in this case, and it will be obvious that no partnership
subsisted between the parties.  It was manifestly the in-
tention of the parties, that no such association should ex-
ist between them.  It was an arrangement, in which ben-
efits were to be realized by one firm from the other, and
compensation conferred in proportion to the profits of a par-
ticular branch of their respective business operations, and
unlike a partnership arrangement, the one party was ex-
pressly excluded from any participation in the business of

the other, contributed nothing and incurred no loss.   The stipulations in the agreement, its qualifications and guarded phraseology, are repugnant to essential elements of a partnership *inter se*, and show that it could not have been contemplated by the parties.   Judge Story in his work on Partnership, § 30, says: "It may be laid down as a general rule, that in all such cases, no partnership will be created between the parties themselves, if it would be contrary to their real intentions and objects."   We conclude then, as between the parties, that no partnership existed, and therefore the agreement in that respect, was admissible in evidence.

2. The agreement was next objected to, on the ground, that it was not a contract between the parties to this suit, as one member of a firm cannot bind his co-partner under seal.   This rule in its general application to common law proceedings, cannot be disputed.   But, originating chiefly from technical reasons, connected with the doctrine of agency, it has been considerably relaxed by recent decisions, in order to accommodate the advancement of commercial intercourse, and the exigencies of business associations.

It now appears to be well settled, that a sealed instrument made by one partner in the name of the firm, is binding upon his co-partners who assent to the contract before its execution, or subsequently adopt it either by parole or other evidence of ratification.   *Cady* v. *Shepherd*, 11 Pick. 405; *Clement* v. *Brush*, 3 John. Cas. 180; *Bond* v. *Aitkin*, 6 Watts. & Serg. 165.   In *Swan* v. *Stedman*, 4 Met. 548, it was held that the adoption of such an instrument, might be shown by mere silent assent thereto.

It now remains to be seen, whether John Rivereau of the firm of A. Alexander & Co., and Silas Haight of the firm of Joseph Price & Co., have sufficiently assented to and adopted the instrument signed by their respective partners, in the company names.   So far as Rivereau is concerned, the simple fact that the suit was brought in the partnership name, amounts to a sufficient adoption of

the instrument on his part, and precludes the defendants from denying his participation in its execution. *Dodge* v. *McKay*, 4 Ala. 346. In relation to Haight, it appears by the bill of exceptions, that the plaintiffs below introduced him as their witness, and among other things proved by him, that the firm of Joseph Price & Co., consisted of said Price and himself; that after said agreement was drawn up, it was shown to him, and he assented to its correctness, and was satisfied with its provisions, and that under it, the respective parties went on and transacted business. That this amounted to a full sanction and ratification of the agreement by all the parties, cannot, we think, be questioned.

Again, it appears by the testimony of Haight, that the said firms were engaged in the storage, forwarding and commission business at the time the contract was entered into, and it may therefore be very correctly regarded as within the scope of their commercial dealings, as an agreement which would have been equally binding upon the parties without a sealed or even a written instrument. It could not, consequently, be vitiated by the addition of a seal. 1 Brock. 456; 3 U. S. Dig. 393, § 26; *Deckard* v. *Case*, 5 Watts. 22. In *Tapley* v. *Butterfield*, 1 Metcalf 515, it was held that one partner has authority without even the knowledge of his co-partner, to mortgage the whole stock in trade, to secure a particular creditor of the firm; it was also held, that the rule that one partner can not bind his co-partner by deed, does not prevail when he thereby conveys property of the firm which he might have conveyed without such deed, and hence it was concluded by the court, in that case, that the sealed mortgage of the goods executed by one partner in the name of the firm, bound both of them, and constituted a valid lien upon the property. These authorities show to what extent the rule in question is relaxing in its adaptation to business operation, and they also support the conclusion to which we have arrived in this case, that all the parties to this suit became parties to, and were held by the instrument in question.

3. Evidence was given by the defendants below, showing that the plaintiffs after the contract was entered into, ceased to do business as forwarding and commission merchants and that in consequence, the defendants had been obliged to hire additional hands, and also that by virtue of a city ordinance, they had been compelled to pay forty seven dollars wharfage.

In relation to this evidence, instructions were given, to which objections are urged. We have carefully examined the several instructions, as given, refused or qualified by the court, and can see nothing that will justify a reversal of the proceedings. Upon the first branch of the evidence the jury were instructed, that if plaintiffs abandoned the contract before any violation thereof by the defendants, that they also had a right to abandon it on their part, provided the abandonment of plaintiffs was not by their consent or at their request. They were also instructed, that if the plaintiffs neglected to perform their part of the contract, in consequence of which, the consideration of the agreement failed, they could not recover. These instructions, we think, comprise all that was material for the defendants below, and all they should require in a just submission to the jury, or in a fair adjudication of their rights. Upon the other point, the court instructed the jury, that if after the contract, an ordinance was passed creating a liability on either party, by way of taxation or license, and if the parties still continued to act under the contract as they did prior to the passage of such ordinance, it could not be set up in avoidance of the contract. We think the plaintiff in error has no reason to complain of this instruction. It is stipulated in the contract, that it should not interfere with any ordinance that might be passed relative to the landing, the wharf and wharf boats. It appears then, that such ordinances were anticipated when the agreement was entered into, and still the parties agreed that they should respectively conduct their own business, at their own expense and sustain their own losses. Any tax for license upon the business of either firm would come

under the denomination of expenses, which according to the agreement should be defrayed by the party incurring them. And agreeable to the instruction, if the party voluntarily continues in the transaction under such additional expense, it shows an acquiescence in it, which will prevent an avoidance of the contract.

It is true, that a portion of the special instructions asked for in this case, might have been given with propriety, but as the substance of those special instructions were included in those of a more general character, there was no impropriety in refusing them. *Gentry* v. *Borgis*, 6 Blackford 261.

Judgment affirmed.

*J. C. Hall*, for plaintiff in error.

*W. J. Cochran* and *C. E. Stone*, for defendants.