Thurman, J.
It is now generally conceded that the rule, that ■one partner has no power to bind his copartners by deed, if not purely arbitrary, rests upon very unsatisfactory reasons, and the various cases in which it has, in effect, been departed from, show the struggles of common sense to get rid of it. Nevertheless, it has been so often recognized by. *our own courts, that we do not fool at liberty to deny it; for even arbitrary rules may become so -incorporated in the law as to be intangible save by the legislative power. With the limitations then placed upon it by the current of modern decisions, and with a right understanding of its mean, ing, the rule may be admitted. What does it mean ? Does it go so far as to say that an agreement, executed in the partnership name, *419 is no ovidence at all against the firm, if a seal happen to be attached to it? We do not so understand it. On the contrary, the terms of the rule are fully observed, when we say that such agreement is not the deed of the firm. No action of covenant will lie upon it against the members of the company who did not execute it, without proof of their prior or subsequent assent to it. In the absence of such assent, it is the covenant of none but the partner who sealed it. But the company may nevertheless, be bound. Thus a transfer of property, which would be good if made by an unsealed instrument, is not vitiated because a seal is attached. Anderson & Wilkins v. Thompson, 1 Brock. 456; Tapley v. Butterfield, 1 Met. 515; Story on Part., secs. 121, 122. And an agreement to pay money or perform services, though the deed only of the partner sealing.it, may yet be evidence of a partnership liability. James v. Bostwick, Wright, 142; Sale v. Dishman’s Ex’rs, 3 Leigh, 548; Wharton v. Woodburn, 4 Dev. & Bat. 507; Collyer on Part., sec. 471, note 1. The case of James v. Bostwick was covenant on an agreement to furnish certain steam machinery. Breaches: Non-delivery of a part of it, and defect in quality of the part that was delivered. The agreement was subscribed and sealed by Bostwick thus: “ Richmond & Bostwick [seal].” The action was against him only. On the trial, he offered his copartner, Richmond, as a witness, first executing to him a release. He was objected to on the ground that he was interested in the suit. The objection was sustained, the court saying : “ This contract is a partnership contract in equity, though in law so executed as to subject one of the partners only upon the covenant, as but *one sealed it. There can be little doubt, but that if a recovery is had, and the defendant prove insolvent, the witness might be subjected in equity to the debt. He is called then in favor of his own interest, and the release-of his copartner can not affect his liability to the other party to the covenant. He must be rejected.” Now, what makes this case more directly in point, is the fact that no evidence, so far as appears, was given, from which a partnership liability could be inferred) save the agreement sued upon, and proof of the existence of the firm.
Sale v. Dishman’s Executors was a bill in chancery against the representatives of a deceased partner, to recover money due upon a sale of some corn. The agreement for the purchase of the corn and payment of the price was in writing, subscribed by Berryman, *420 -one of the partners, in the name of the firm, with a seal attached. Proof of the partnership, and that Dishman had advised Berry-man to purchase the corn, was made, but there was no evidence that he had ever assented to the giving of a bond for it, or that he had ratified the bond after it was given.
The court nevertheless sustained the bill. They held that Dishman, though not liable in law, was liable in equity. And the following remarks of Judge Tucker, the president, tend to show that the mere form of the agreement was prima facie evidence that the firm was bound, and that it was by a mere mistake of law that the contract was sealed. He said : “ It is apparent, from the original agreement, signed by Berryman, in the name of the firm, for the purchase of the corn from Sale, that the firm was looked to as-debtors for the amount. It is natural that it should have been so, as Dishman lent his name to give credit to the firm. The contact thus signed, and (by mistake of received principles which deny the right of one party to bind another at law by a seal) being sealed also, was nevertheless binding in equity upon both parties. When, indeed, it appears that the creditor intends to look only to the individual partner, it may be otherwise; but, in equity, the form of the thing is immaterial, *if the substance of the contract was-to bind both. Thus, even a joint bond is, in equity, after the death -of one of the obligors, construed to be several, as well as joint; because, in justice, in conscience, and by intent of the parties, both are debtors. Wherever the real consideration is paid to both, both are bound to make satisfaction, though, through ignorance, the instrument is so drawn as to have another effect at law; and as there is no legal remedy, a court of conscience will, if it-can, reach the effects of the persons borrowing and receiving the money. Bishop v. Church, 2 Ves. Sen. 100. In this case, then, the partners were cle'arly bound by the original contract.” The good sense of these remarks is so apparent, and the doctrine they maintain so necessary to prevent fraud and effect justice, that we should willingly approve them, were the question res nova; but, coinciding, as they do, with the decision of our own court, before referred to, we can not hesitate a moment to adopt them. ' Indeed, it would be a stigma upon the law to relieve a partnership from all liability because a seal is affixed to an agreement, which, without it, would effectually bind the firm; or to say that, although the agreement, if unsealed, would raise a presumption that it was given on partnership ac *421 count, and for a consideration received, or to be received, by tbe company; yet no such presumption arises, if a scrawl is added to the partnership name. Common sense teaches that when the firm name is subscribed, the intent is to bind the firm, whether a seal is used or not; and it would be a very strange occurrence, and one that probably never took place, for an agreement to be thus executed when none but the person executing it is to be bound.
The case of Wharton v. Woodburn, supra, is so directly in point that something-more than a mere reference to it would seem proper. It was an action of assumpsit against William Woodburn, surviving partner of a firm composed of himself and Watson W. Woodburn, to recover the amount of money which the plaintiff, Wharton, had paid in discharge of a bond executed to one Summers by Watson W. Woodburn, in the *name of Watson W. Woodburn & Co., and also executed by the plaintiff as a surety. Owing to the seal, the firm was not liable at law; and it was also contended that it was not equitably bound, for it was urged that the jmoof showed that the money for which the bond was given was, in truth, borrowed for the individual benefit of the partner who executed it.
There was no evidence that William Woodburn, the defendant, had requested the plaintiff to sign the bond, or become surety for the money, or that he had ever acknowledged the relation of principal and surety to exist between them. On the contrary, the plaintiff signed the bond at the request of Watson W. Woodburn. Upon this state of facts, the question was, whether the plaintiff was to be regarded as the surety of Watson W., only, or as the surety of the firm. The jury, under the charge of the judge before whom the case was tried on the circuit, found for the plaintiff, and judgment was given accordingly; to reverse which, the case was taken, by writ of error, to the Supreme Court, where the judgment was affirmed. After premising that the bond did not bind the firm at law, but that, in equity, if certain facts were shown, it might do so, the court proceeded as follows: “ But it is to bo re collected that the contract between the principal and surety, though it may be inferred from the nature of the security given to the creditor, is not contained therein, nor evidenced thereby; but is a collateral contract, usually a parol one, which may therefore be shown by any competent and satisfactory evidence. For instance, it could not be denied but that if the plaintiff had, at the request of both the Wood" burns, borrowed money in his own name and on his sole responsi *422 bilitv, ho could have regarded them as his principals, although neither of them was bound to the lender. And we understand that in this case, it is not denied by the defendant’s counsel, that if the money had been borrowed for, and received by, both the Wood-burns, the plaintiff, notwithstanding the insufficiency of the bond to bind the Woodburns to Summers, could hold them both as his px-incipals. His engagement would have been entered into at their *request; they would be bound to indemxxify him from loss thereby sustained. The question then seems narrowed to this, whether a responsibility incurred upon a request made by one professedly in behalf of himself and pax’tners, in relation to their common busixiess, but in truth for his individual bexxefit, is, in law, ixxeuxu-ed at the x-equest of both. We think it is. If one of two partners purchase goods ostensibly for the partnership coxxcern, but ixi truth for himself, the firm is bound by his act—-he is the agent of the firm ixx relation to its business; axxd third persons contractixxg with him as that ageixt, coxitract with the firm. So, if he box-row money for the fix-m, but misapply it, the fix-m is bound. When credit is advaixced at the request of such agent, ixx behalf of tho alleged busixxess of the copax-tnership, it would seem that the contx-act therefor is as much made with the concern, as when goods ax-e purchased or money lent.” I have quoted this passage in full, notwithstanding its length, because of its direct applicability to the case under consideratioxx, axxd' because xxo language of nxy own could better, if so. well, express oxxr views of the law. Ixx the light of these authox-ities and of reason, we think there can be no erroxixx holding: 1. That the xxote to Clark having been executed in the partnership name of “Alfred J. Purviance & Co.,” the prosumptioxx is, in the absexxce of all proof to the contrai-y, that it was given for a consideration received, or to be received by the firm, and was intended and undex-stood to bind it; that the seal was added in mere ignorance of the effect of so doing, and that, although the instrument must, at law, be coxxsidered as the deed, of the pax-tner only who sealed it, thex-e being xxo proof of assexxt by the other partners, yet, in equity, the firm became liable; and that, consequently, were there no other evidence of the coxxtract of suretyship than that afforded by the instx-umeixt itself, and the fact that Sutherland was xxot a principal, the presumption would be that he was the surety, not of Alfred J. Purviance alone, but of the fix-m. 2. That whether the fix-m was or not bound to Clark, yet the fair presumption, from *423 the testimony, is, that th.e ^plaintiff became surety at the request of Alfred J. Purviance, who was professing to act for, and in behalf of the firm, as the note clearly shows, and that his request, under such circumstances, and in the absence of all proof that he alone was to be bound, is, as was decided in Wharton v. Woodburn, in law, the request of the firm; and, consequently, the relation of principals and surety, between the firm and the plaintiff, was thereby created.
But it is contended that whatever claim Clark may have had against the firm was merged in the judgment, and as one only of the partners was a party to that, the other partners were released from liability, even to Sutherland. This is a most untenable proposition ; for, first, Alfred J. Purviance, the partner sued by Clark, was the only one of the company liable to an action at law, or, at least, to an action at law upon the note as a sealed instrument. His copartners were liable in equity. It follows that their liability was not affected by the recovery of the judgment. In the event of his proving unable to pay it, they were subject to be sued in equity, by Clark, as was expressly decided in James v. Bostwick, and affirmed. in the other casos I have cited. Secondly. If all the partners were at any time bound to indemnify Sutherland, they continue bound. It was not in the power of Clark, the creditor, to discharge any of them from this liability, by obtaining a judgment against the others. He had no authority to change the relations between Sutherland and his principals, and deprive the former of any portion of his indemnity.
Finally. It is said that Sutherland could not maintain his action, because he made payment to Clark’s administrator in a non-negotiable note, or rather, because the testimony did not show that it was negotiable. It is admitted that if it was negotiable, the giving it in satisfaction of the prior claim, would support a count for money paid, but it is contended that the law is otherwise if it was not negotiable. It is unnecessary for us to consider the authorities cited to support this proposition, none of which are Ohio *cases, for our statute in force when the action was brought, authorized a suit and recovery by a surety against his principal, whenever judgment was rendered against the surety, even though the judgment remained unpaid. Swan’s Stat., old ed. 878, sec. 5. The present case, if not within the very letter of the act, is certainly within its equity. Judgment had been rendered against Sutherland *424 before he brought his suit, and it is difficult to see why he might not, by force of the statute, have maintained an action, even had he made no sort of payment. But he gave his note,-which was received in full satisfaction of the prior debt, and it would certainly be an unwarrantable departure from the spirit of the statute, to say that, under the circumstances, he could not have an action for money paid.

Judgment affirmed.