# Deckard *against* Case.

One partner may transfer the whole stock in trade of the firm; and if possession be delivered, and the transaction be *bona fide*, it matters not whether the instrument of transfer be under seal or otherwise.

ERROR to the common pleas of *Perry* county.

This was an action of trespass by James H. Case, Daniel Charles, and George Snyder, against John Deckard, and arose out of the following circumstances:

Lowe & Mead were partners in the coach and wagon making business, and contracted a number of debts, for some of which judgments were obtained, and executions issued, to an amount about 600 dollars. The sheriff levied upon their stock in trade, consisting of partly finished carriages and wagons, &c. As soon as the levy was made, and the property in the possession of the sheriff, Mead ran off and left the country. A number of their creditors, among whom was the plaintiff, had a meeting, in which it was understood that if the property was sold in its unfinished condition by the sheriff, it would be sold for less than its value; and Lowe, being present, agreed to transfer it all to the plaintiffs in this suit, upon their assuming to pay certain debts, and the executions levied on the property; and in pursuance of which he executed the following assignment.

"Know all men by these presents, that I, Jesse Lowe of Liverpool township, Perry county, state of Pennsylvania, wagon and coach maker, for and in consideration of the sum of 800 dollars, to me in hand paid by George Snyder, Daniel Charles and James H. Case, of the same place, at and before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, have bargained, sold and delivered, and by these presents do bargain, sell and deliver unto the said G. Snyder, D. Charles and J. H. Case, twenty morocco skins, &c., &c., (setting out a list of items) unto the said G. S., D. C. and J. H. C., their executors, administrators

[Deckard v. Case.]

and assigns, to them and their own proper use, benefit and behoof. And I, the said Jesse Lowe, my heirs, executors and administrators, the said bargained premises unto the said G. S., D. C. and J. H. C., their executors, administrators and assigns from and against all persons whomsoever, shall and will warrant, and for ever defend by these presents.

"In witness whereof I have hereunto set my hand and seal the 23d day of November 1832.

"JESSE LOW, [L. s.]."

When this assignment was executed, the property was in the possession of the sheriff, and had been removed by him from the place where it had been levied upon. The sheriff then gave up the property to Case, Charles and Snyder, who rented the shop which had been occupied by Lowe & Mead ; took the property back there, employed hands, and, among others, Lowe himself, and conducted and carried on business there for fourteen or fifteen months. At this time an execution issued at the suit of Alexander Graydon against Lowe & Mead for 259 dollars, which was put into the hands of John Deckard the defendant, who, upon being indemnified by Alexander Graydon, the plaintiff in the execution, levied on the property in the possession of Case, Charles and Snyder, as the property of Lowe & Mead, and sold it for 159 dollars. This action of trespass was then brought against John Deckard.

The defendant rested his defence on two grounds : first, that the bill of sale of the entire stock of the firm, by Lowe alone to the plaintiffs, was illegal, and vested no property in them, particularly as the instrument was under seal. And secondly, that the employment of Lowe by the plaintiffs was part of the consideration of the transfer, and invalidated it.

The court (Reed, President) ruled the first point against the defendant, and upon the second point referred the fact to the jury with direction that the law was with the defendant, if they believed the fact. Verdict for plaintiffs for 650 dollars.

*M'Kinney* and *Alexander*, for plaintiff in error.
*Watts* and *Penrose*, for defendants in error.

The opinion of the Court was delivered by

ROGERS, J.—It is a general principle of the law of partnership, that the partners are bound by what is done by each other in the course of the partnership business. They are considered as virtually present at and sanctioning the contracts they singly enter into in the course of trade ; and each is vested with authority to act at the same time as principal, and as the authorised agent of his co-partners. Each partner reposes confidence in the other, and by the act of entering into the partnership, constitutes him his general agent as to all the partnership business. These principles are established for the benefit of the partners themselves; for it would be a great im-

[Deckard v. Case.]

pediment to commercial dealings if, in the ordinary transactions of trade, it were necessary that the actual consent of each partner should be obtained; or that it should be required, that the transaction should be really for the benefit of the firm. When, therefore, the act of one has the appearance of being on behalf of the firm, it is considered as the act of all. Among the powers most ordinarily exercised by partners, is the *jus disponandi*, or the power which each partner, individually, has of disposing of the joint stock or merchandise. But it is contended that these powers are subject to certain limitations; and on the authority of Justice Washington, in Pearpoint and Lord *v.* Graham, 4 *Wash. C. C. R.* 234, it is said to admit of serious doubt whether one partner *can*, without the consent of his associates, assign the whole of the partnership effects (otherwise than in the course of the trade in which the firm is engaged) in such a manner as to terminate the partnership. Justice Washington inclines to take a distinction between a voluntary act of a partner, and those cases where, by the act of God, or by the operation of the law the partnership is dissolved, as by death or bankruptcy of a partner. But why should the disposal of the whole stock in trade necessarily dissolve the partnership? The transaction may be for the benefit of the concern, and may increase, rather than diminish the ability of the firm to continue their business. It is admitted he can sell part without the actual consent of his associates, and the policy of limiting that right is not very apparent, where the transaction is concluded in good faith; still less in a case like the present, when the arrangement is most clearly for the benefit of the firm. For had the property been sold by the sheriff in its unfinished state, it would have been attended with the sacrifice of the interests of all the parties. Mead, aware that the property had been taken in execution, abandoned all care of it. From necessity, then, the other partner should have the power of disposal, in payment of the debts of the firm. It cannot, with any propriety, be considered as a voluntary act of disposition, but some arrangement was required to relieve the property from the custody of the sheriff. But is the power so limited as that one partner cannot dispose of the whole of the partnership effects? In Fox *v.* Harbury, *Cowp.* 445, lord Mansfield held, that each partner has a power singly to dispose of the whole of the partnership effects. The authority is implied from the nature of the business. Justice Brainard, in 4 *Day's Rep.* 430, expresses the opinion that one partner has the absolute power of disposing of the whole. And in Harrison *v.* Story et al., 5 *Cranch*, it is held, that one partner may, in the partnership name, assign the partnership effects and credits in trust for creditors of the firm. The case of Duherse *v.* Legeon, 1 *Dess. C. R.* 537, would seem to have been put on the ground of fraud, and certainly the transaction must be free from every taint of fraud; but when the assignment is *bona fide*, I cannot doubt the power of one partner to transfer the whole, as well as a part of the partnership effects. Nor do I think it can make any difference in passing the interest of the

[Deckard v. Case.]

firm, when the property has been delivered, whether the *instrument* of transfer be under seal or not. The assignment transfers the whole right of the firm, and not merely the right of Lowe. It purports to assign the whole interest, and contains a warranty against all persons whatsoever.

There is no ground to say, that there was fraud in the contract. The fact of fraud was left by the court to the jury, and they have found that the contract was *bona fide.* Nor has the plaintiff in error a just cause to complain of the charge in relation to legal fraud. At the time of the agreement, the property had been severed from the possession of the debtor, and was afterwards re-transferred to the premises from which it was taken. The levy was made upon all the property of the defendant: after the levy, it was removed to an adjoining warehouse and held by the sheriff in custody for several days; and when so held, the contract was made for a valuable consideration. The shop to which the property was re-transferred was rented by the vendees; it was under their superintendence and care; they hired the workmen, purchased the materials, and continued the direction of the concern for fourteen or fifteen months. There is nothing in all this *either fraudulent in fact or forbidden by the policy* of the law. Nor will the fact that the plaintiff employed Lowe as a journeyman, affect the transaction, unless his employment was a part of the consideration of the contract.

Judgment affirmed.