If the transaction of the 25th July, 1846, by which Hannah Mabbett became in form the owner of one-half of the stock in trade which, up to that time, had belonged to Mabbett Fountain, was a valid *Page 457 
transaction, the goods which were subsequently seized upon the defendants' execution against Mabbett Fountain, did not belong to the defendants in the execution, and were not, generally, liable to that process. The individual interest of Fountain, in the goods of J.S. Fountain Co., was liable to seizure, and for the purpose of reaching it, the sheriff might take possession of and sell the goods; but the purchaser would acquire no interest except subject to the adjustment and liquidation of the partnership liabilities. (Walsh v. Adams, 3 Denio, 125.) But although the sheriff might seize the corpus of the property, he could only sell the interest of Fountain; and if he undertook to sell generally, as though the goods were fully subject to the execution, he would be a trespasser. (Waddell v.Cook, 2 Hill, 47.) When the present suit was commenced, the sheriff had gone no further than to seize the goods, and this he was justified in doing, if they belonged to a copartnership of which Fountain was a member. The plaintiff, to maintain the action, was therefore under the necessity of establishing both the sale by Henry F. to Hannah Mabbett, and the transfer by the firm of J.S. Fountain Co., consisting of Fountain and Hannah Mabbett, to the plaintiff. So far as matters of fact are concerned, the jury have passed upon both transactions in favor of the plaintiff, and it remains to determine whether any errors were committed by the judge, in receiving the evidence, in allowing the case to go to the jury, or in his instructing or refusing to instruct them in matters of law. A great number of exceptions were taken to each class of the rulings of the judge; but it will not be necessary to examine them all, and I think not more than one of them.
The question as to the validity of the transfer made by Henry F. Mabbett, as the attorney of Hannah Mabbett, in the name of J.S. Fountain Co., to the plaintiff, raises the most material of the questions which have been discussed on the argument. This point arose on the motion *Page 458 
for a nonsuit, which was denied; but as the transaction was more fully explained by the subsequent testimony, I propose to examine it in reference to the instructions given by the judge to the jury. He charged in terms that either partner of the firm of J.S. Fountain Co., without the consent of the other, could sell the whole partnership effects for money or notes, or could apply the whole or any part of them in payment of debts, or could pay one creditor to the exclusion of others. The defendants' counsel distinctly excepted to this portion of the charge. The instruction, though in the form of an abstract proposition of law, referred solely to the instrument of the 3d December, 1846, by which the plaintiff obtained the only title to the property which, before that time, belonged to J.F. Fountain Co., which he asserts in this action, and the judge in his subsequent remarks so applied it. Fountain Co. had then on hand goods to the nominal value of $12,300, according to an inventory made a few days before, and choses in action amounting nominally to $3187.60. The firm was in insolvent circumstances, and, among other debts, owed the plaintiff $6286.47, and the defendants a large amount. Fountain was at the place of business of the firm, actively engaged in carrying it on. The other partner, Hannah Mabbett, took no part personally in the business, but acted by her attorney, Henry F. Mabbett, who was occasionally in attendance at the store, and I will assume, had all the power which Hannah Mabbett herself could have exercised had she been personally present. H.F. Mabbett, acting for Hannah Mabbett by an instrument, having the effect of a bill of sale, conveyed to the plaintiff all the goods of the firm and all their choses in action, embracing together all their property of every kind. For the purpose of the transaction, the goods were estimated, and I will assume accurately, to be worth 50 per cent, and the notes and accounts 60 per cent of their nominal amount, making $8062.56, and exceeding by $1776.09 the amount of the plaintiff's debt. *Page 459 
For that balance the plaintiff gave his note to H.F. Mabbett, the amount of which was afterwards applied by the plaintiff in the payment of other debts of Fountain Co., which payments were, of course, further preferences. This transaction was without the knowledge of Fountain, and was known both by the plaintiff and H.F. Mabbett, to be without his consent and in opposition to his wishes. There was evidence on both sides as to a subsequent assent by Fountain to this transfer; but this is not material to be considered, as the judge charged the jury that it was valid whether he assented or not. I am of opinion that this ruling cannot be sustained. I am aware that the authority of each of the several partners, as the agent of the firm, is very great. It extends to all the goods of the firm, and warrants sales, mortgages and pledges, and every variety of transactions incident to the business in which they are engaged. But it is not wholly without limit. It must necessarily be confined to the scope and object of the business, and in the course of its trade and affairs. It is no objection that the tendency and ultimate effect of a transaction entered into by one partner, is disastrous or even destructive to its business. But this transfer was made with the deliberate intent and purpose of putting an end to the partnership enterprise, of wholly subverting its objects; and such was its effect. This is apparent not only from its embracing every portion of its means to carry on business, but from the fact that forcible possession was immediately taken of its books of account, and of the store in which the business had been carried on. I have carefully examined the several cases upon this question which were cited at the bar, and such others as I could meet with; and I think there is no well considered judgment which would justify this transfer. The two cases which have been decided in the late court of chancery, are entitled to primary consideration. In Egberts v. Wood (3 Paige, 517), the transfer which was in controversy was made after the dissolution of *Page 460 
the firm, and when the authority of the partners as such, had ceased. The assignment was not sustained, and what was said by the chancellor as to the effect of such a transfer by a partner during the existence of the copartnership, was obiter. Besides, I think it apparent from his remarks as to the validity of the assignment by one partner, against the known wishes of his copartner, that he would not have justified the transfer now under consideration. In Havens v. Hussey (5 id., 30), the assignment was to a trustee, and his creditors were to be paid according to certain preferences. It was adjudged void. The same question was decided in a similar manner in Hitchcock v. St.John, (1 Hoff. Ch. R., 511.) A like judgment was pronounced inDeing v. Colt, and in Hayes v. Heyer (3 Sandf. S.C.Rep., 284, 293), where the assignments were to a trustee without preferences, and in Hayes v. Heyer (4 Sandf. Ch. R., 485), the same able judge who tried this cause, thought the question on an assignment without preferences, a very difficult and doubtful one, which, in the case then before him, he declined to decide. There is a class of cases where the acts of one partner in transferring the partnership effects, have been held valid on account of the absence of the other partners. Thus, in Harrison
v. Sterry (5 Cranch, 289, 300), the assignment was by the managing partner in the United States, the other partner being in England; besides, it was partial, not embracing all the effects of the firm. So in Anderson v. Tompkins (1 Brock., 456), decided by Chief Justice Marshall. The firm were transacting business in Virginia. One partner had embarked for England, and the transfer was made by the other who remained in this country; and that circumstance was relied upon by the court. So also inDeckard v. Case (5 Watts, 22), the transfer was of specific articles, but it in fact embraced all the property of the firm; an execution had been levied upon it, and one of the partners having absconded, the conveyance was executed by the other, and the object of it was to enable the creditors to whom the property was *Page 461 
conveyed to prevent its being sacrificed, it consisting of unfinished articles in the course of manufacture. The court said "Mead, the absconding partner, aware that the property had been taken in execution, abandoned all care of it; from necessity,
then, the other partner should have the power of disposal in payment of the debts of the firm." Again, in Hennessy v. TheWestern Bank (6 Watts Serg., 300), the assignment was of the entire property with preferences, by two of the partners, the other being absent, and the case was placed on the authority ofDeckard v. Case. There are a few other cases which do not fall within this distinction, but suggest views favorable to the conclusion at which I have arrived. In Dickinson v. Legare (1Dessaas., 537), it is held that one partner of the existing copartnership could not make a transfer of all the partnership effects. In Pearpoint v. Graham (4 Wash. C.C.R., 232), Judge Washington expressed great doubts whether one partner could make an assignment of the entire property of the concern, but finally held in favor of the assignment on the ground of a ratification by the non-executing partner. Mills v. Barber (4Day, 428), was an assignment of a single chose in action, and does not appear to have affected the entire business of the firm. A good deal of stress is placed in several of the cases, particularly in the one referred to from 5th Paige, and in those from 3 Sandford's Superior Court Reports, upon the fact that a trustee was interposed between the parties and their creditors by the act of one of the partners; and this, no doubt, is a circumstance which strikingly shows that the transfer is without the scope of the partnership enterprise. I think there is something of the character of a trust in this case. The plaintiff's debt would not cover the entire value of the property after all deductions were made; for the balance a note was given, and it is pretty obvious that this was to be used in making other preferences, and it was actually used for that purpose. It is fair to infer that such was the intention of the plaintiff *Page 462 
and H.F. Mabbett. But waving that consideration, the fact that the property was of greater value than the plaintiff's debt, and yet that it was all conveyed to him, shows that there was another object than the payment of the plaintiff's debt; that object, apparently, was to take the whole of the copartnership business quite out of the hands of Fountain, and wind it up according to the views of the plaintiff and H.F. Mabbett. This, I think, exceeded the power of one partner. It was not within the scope of the contract of partnership, but intentionally subversive of it.
I think, therefore, that an error was committed on the trial, and that the judgment should be reversed.
JOHNSON, J., concurred with DENIO, J.
Judgment affirmed.