Hoffman, J.
My conclusions are as follows:
First. The title of Stringer and Townsend rests exclusively upon the judgment and execution, obtained and issued in favor of the Harpers, and the purchase, at the sheriff’s sale, under the same. The rights which the Harpers could have asserted, had they purchased, can be asserted by these defendants, and none other.
Second. That judgment, execution, and sale were, in 'themselves, ineffectual, as against Grossman individually, or as against the partnership property in hostility to partnership creditors. It directly affected and transferred only the interest of Willett in the partnership effects. (Stringer a. Willett, Jan. T., 1857.)
Third: But as connected with the mortgage in question, Stringer and Townsend acquired by the purchase certain rights. 1st. They acquired the right to insist that it was in *154 truth Willett’s mortgage; that is, that the money had been advanced by him out of his own funds ; or, to say that it was fictitious and without consideration; or to impeach it and set it aside on other grounds. Thus they would free Willett’s eventual interest from such amount of incumbrance. 2d. They obtained a right to claim that if the consideration of the mortgage was honest'and full, and yet the money was, in fact, Willett’s, they had purchased his title to the mortgage, and also Grossman’s interest in the partnership property, to the extent of the amount secured by it.
Upon this theory, had Grossman been the absolute owner at the time of the mortgage, with no partnership between him and Willett, Stringer and Townsend would have a title and right in the property to the extent of the mortgage, subject to any prior liens. The sheriff’s sale transferred Willett’s right to the mortgage, and what it covered.
( But if Grossman and Willett were really partners when the mortgage was given, then, as against partnership creditors, it was unavailing as to the partners, and must be so as to Stringer and Townsend. Still, as between these parties themselves, it operates upon the eventual interest of each of them, and neither of them can claim any right adverse to these defendants under it. All their rights respectively under it have passed.
Fourth. As between Grossman and Willett, there was no partnership at the date of the mortgage. The actual agreement of the 8th day of Hay, 185é, with the omission to sign the paper which would have constituted one, with some other evidence, leads me to this result.
But the evidence is decisive to establish a partnership as to strangers.
It is also clear that Willett represented himself to be a partner, to Stringer apd Townsend; that he stated to them his having invested from eight to ten thousand dollars in the concern; that his representations induced them to give a credit, which otherwise they would not have given, to Grossman; and which effectually led them astray.
Hence, as between Willett and these defendants, on the assumption of its being Willett’s money for which the mortgage was given, it is wholly immaterial whether there was a partnership or not. If it profits the defendants to assert that there *155 was a partnership, Willett cannot be allowed to gainsay it. If it is for their advantage to make out no partnership, they are free to do so as to him.
Fifth. But what will be the legal conclusions on the supposition of the moneys being really trust-funds in Willett’s hands ?
When a partner lends trust-moneys to his firm, if the fact of its being trust-money is unknown to the other partners, no joint debt is created which can be proven against the joint estate. (Jaques a. Marquand, 6 Cow., 479.) But if the other members are aware of the fact, then the firm and its property is responsible. It is treated as the borrowing the money of a stranger, through an agent or trustee. (Hutchinson a. Smith, 7 Paige, 26; Whitaker a. Brown, 16 Wend., 509; Richardson a. French, 4 Metc., 577.)
The principle is shown in the rule in bankruptcy. One partner may prove that his copartner is indebted to him on the partnership account; but his proof is unavailable so as to entitle him to receive any thing until all the joint-creditors are paid in full. (Coll, on Part., 972; 6 Hill, 583.)
But if trust-moneys are brought into the firm by a member, and appropriated to partnership purposes, the cestuis que trust cannot be admitted to prove against the joint estate, unless the other partners knew of the funds being trust-funds. (Exp. Heaton, Buck, 386; Exp. Apsey, 3 Br. Ch., 265; Exp. Watson, 2 Ves. & B., 414.) See particularly Lord Eldon’s judgment in the last case.
A joint debt may, then, be thus created to the beneficiaries of a trust-fund with the knowledge and assent of all.
It seems also clear, that one partner can execute a mortgage of the partnership property, to secure such a debt. The cases are collected in Coll, on Part., §§ 396-398. He cites, also, Tupley a. Butterfield (1 Metc., 515), in which it was expressly held that a mortgage can be executed by one partner to bind the partnership property. (See, also, Anderson a. Tompkins, 1 Brock., 456; Deckard’s Case, 5 Watts, 22; and Milton a. Morher, 7 Metc., 244.)
And if the assent of the copartner is requisite, that is found in the present instance'.
I do not think that the authorities in our own State establish any different rule. (Hitchcock a. St. John, Hoffm., 511.)
*156 The fact that the mortgage was taken to Willett as trustee, when he was a partner, would never be permitted to defeat the rights of -the children, if the transaction was in truth on their account, and the funds were theirs. x
Sixth. The question is reduced to this: Were the moneys advanced to Grossman, and for which the mortgage was given, the moneys of the children, or not ?
In 1849, it is alleged, the father of Mrs. Willett sold some real estate, and expressed a wish that the proceeds might be applied to his daughter and her children’s use. Willett received them, and down to 1852 he had the possession, control, and disposition of them. They were legally his own, were used as his own, and there is no trace of the wife or any one else interfering with his management, or claiming an interest in the funds.
In 1852, Mrs. Willett makes the will produced in evidence. She gives the sum of $4,388.75, reciting that she holds it in her own right, to her children, and the use to her husband in the manner provided, which it is needless to detail. , ,
The money was then in Willett’s hands, in money or notes.
On the 8th of May, 1854, a mortgage -was executed by Gross-man to one M. M. Barker, to secure the sum of $4,000. The money came from Willett. He had advanced about $587 before that date, in cash; taken up notes of Grossman to the amount of about $2,500, and the balance paid afterwards Such is Willett’s statement of this transaction.
By an instrument dated the 10th of' December, 1854, this mortgage was assigned by Barker to Willett, described as Charles S. Willet, trustee óf C. M. and D. T. Willett. This instrument was never acknowledged; nor was it proven, until the 10th of March, 1858. It was drawn with the assignee’s name in blank, and the blanks are filled up by Willett.
On the 1st of May, 1855, the mortgage in .question in this suit was executed by Grossman to Willett, described as trustee for Charles M. Willett and Drusilla Willett. It was filed on the 19th of May, 1855, and has been duly renewed and refiled.
The consideration, as alleged by Willett, was the $4,000, the amount of the former Grossman mortgage, and various subse.quent advances made by Willett to him, or on his account, in the interim between the dates of such instruments.
*157 In the summer of 1854, and again in 1855, Willett applied for a loan, and said that the lender could have a first mortgage on the presses.
The mortgage in question has been, on several occasions, pledged as collateral security with parties who advanced money for the use of Grossman and of Willett.
In October, 1856, Willett proposed to Stringer & Townsend, that they should purchase the property at the price of $12,000, and represented that there was a mortgage to himself, which he could control, and was no lien upon the premises. He prepared and exhibited a document (Exhibit Ho. 1) of the manner in which this consideration was to be liquidated. A mortgage held by Adams & Co., upon a portion of the property, for the notes of Grossman, indorsed by Willett, amounting to $1,495.04; five notes of Grossman, secured by a mortgage of his own to Derrickson & Co., amounting to $1,410.10; Grossman and Willett’s -eight notes, amounting to $3,587.21, held by Stringer & Townsend, were to be returned, and Stringer & Townsend’s notes to be given, and dated the 25th of Hovember, 1856, for the sum .of $4,526.60, with a sum due- the same parties of $981.05, made up said consideration of $12,000.
And an instrument was prepared by or under the direction of the said Willett, being a-proposed bill of sale of the property, to carry out the arrangement aforesaid, in which the terms of the purchase .-and mode of payment, as above stated, are fully set forth; and in which is a clause, covenanting that the prem-' ises are free and clear of all and every valid or legal incumbrance or charge whatsoever, other and excepting the mortgages executed to and held by the firms of Adams & Co., and of J. T. Derrickson & Co., to secure the payment of the notes held by such firms respectively.
About the 3d of December, 1856, a satisfaction-piece of such mortgage was prepared by direction of the said Willett, and portions of it which were in blank were filled up by him in pencil. An instrument of release was also prepared under his direction, and he had agreed to assign such mortgage to the said Stringer & Townsend, in case such a mode of disposing of it was preferred, in carrying out the purchase of the said property, negotiated for between the parties.
Willett-states that the trust-moneys were to be preserved after *158 the mortgage was satisfied, by taking a part of Stringer & Townsend’s notes, of ''the aggregate of $4,526.60; but the amount he could thus take was dependent upon the proportion which was to be applied to the Bruce mortgage. Again, the notes would be, on their face, partnership property; and when collected, the funds would be in Willett’s hands, utterly undistinguished, and entirely under his control.
Seventh. Upon this evidence, the conclusion appears to me unavoidable, that as between Willett and his creditors, and especially as between him and Stringer & Townsend, the moneys secured by this mortgage must be deemed to have been his own, and the right and interest in the mortgage vested in him individually. It is impossible to trace trust-moneys in this security on this evidence.
Eighth. But this will he to determine the case against the infants without their being heard, otherwise than through their trustee. It is not to be questioned that, under section 113 of the Code, he fully represents them, and can sustain the suit alone. It seems also clear, that it will be difficult to vary the case now presented in its material features, or to prepare it better. But I do' not understand section 113 to be more than permissive; and I consider that,, in a proper case, the court may still require the presence on the record of eestuis que trust, in accordance with the rule in chancery, and the spirit of section 111 of the Code.
The action must stand over for fifteen days, to allow the infants, or some one on their behalf, to apply for the appointment of a guardian, who may make himself, on their behalf, party to this suit by supplemental complaint. Upon the same being at issue, the cause may be retried; but the evidence now taken shall be evidence in the case, with liberty to such guardian to introduce further testimony, to re-examine witnesses, and to reargue the cause.
In case no application is made within such fifteen days from service of this order, the complaint to stand dismissed with costs, and judgment to be entered accordingly.