ROBERT McGREGOR, Administrator, etc., OF ROBERT McLEAN, Deceased, *v.* ELLIS & STURGES, ET AL.

(No. 3,972.)

1. One partner can assign a portion of the joint effects in payment of firm debts, or by way of security for antecedent debts, or debts to be afterward contracted.

2. The assent of a party to an act done for his benefit, or which may injuriously even affect him, may always be presumed, if with a full knowledge of the thing done, he permits it to be applied to his benefit, or does not disclaim it.

3. A trustee having accepted the trust, is not permitted afterward to renounce or repudiate the responsibilities of the office; but the *cestuis que trust*—the creditors may assent to a renunciation of the trustee, and he be discharged. All creditors who are not included in this distinction, (notwithstanding the reassignment by the trustee to the firm,) have still a claim upon the trust property, and can require the trust to be executed for their benefit. The creditors who have released the trustee, in express terms, must be postponed to those who have declined to give their assent to his relinquishment.

4. The creditors of a co-partnership have no special lien upon the partnership property; whatever equity is allowed them is to be worked out through the rights of the partners themselves. Where the separate partners have lost their lien, non can be saved to the creditor. This lien is lost when the joint property is sold in good faith to a third person, or when one partner retires from the firm, disposing meanwhile of his interest to the other partner, or to a third person, with his co-partner's consent, taking the assumption of his co-partner, or of a third person, to discharge all the firm debts.

SPECIAL TERM.—Several cases of a similar nature were consolidated for trial in this particular case. This suit was brought by the plaintiff Robert McGregor, as administrator of the estate of Robert McLean, deceased, against Rowland Ellis and William Sturges, late partners as Ellis & Sturges, Vachel Worthington, W. S. Woodward and Wm. B. Wood, James McC. Lea and Rowland Ellis, Jr., partners as Wood, Lea & Co., and Rowland Ellis and Wm. R. Morton, late partners as Ellis & Morton.

During the progress of the case many judgment creditors

R. McGregor, Adm'r., etc., of R. McLean, Deceased, *v.* Ellis & Sturges et al.

were made parties. The plaintiff sought to subject certain assets, stocks, choses in action and interest in land, etc., alleged to belong to Ellis and Sturges as partners and as individuals, and in the control and possession of certain of the defendants, to the satisfaction of a certain judgment, rendered at the December term of this court, A. D. 1855, for eight thousand nine hundred and eleven dollars, in favor of the plaintiff as administrator of the estate of McLean and against the firm of Ellis & Sturges.

Ellis and Sturges, bankers, doing business in the city of Cincinnati under the firm name of Ellis & Sturges, and also doing business in the city of New York under the firm name of Sturges & Ellis, became embarrassed in business, and the firm at Cincinnati suspended payment on November 8th, A. D. 1854 ; on November 9th, one of the partners, Rowland Ellis, in the absence and under the dissent and protest of his partner Sturges, executed in the name of Ellis and Sturges an assignment of the assets of Ellis and Sturges to the defendant Vachel Worthington in trust for the benefit of the creditors of that firm. On November 17th, A. D. 1854, Rowland Ellis, by deed duly executed and recorded, conveyed to the defendant Worthington in trust for the benefit of the creditors of the firm, as also his individual creditors, certain real estate in Cincinnati, belonging to said Ellis partly in severalty, and a part being an undivided interest of two-thirds in common with Wm. R. Morton, who owned the other undivided one-third, and being part of property owned by Ellis and Morton, when partners in the banking house of which Ellis and Sturges were the successors. Worthington accepted these assignments in the expectation that Sturges would speedily be convinced of the propriety of the act and give his assent to it. Sturges however refused to sanction the assignment and proceeded to pay off the debts of the concern with means in his own control and by making such arrangements with creditors from time to time as best he could. The assignee had entered into the

possession of the bills receivable and a small amount of other assets of the firm and continued to hold his position and exercise the duties of assignee. Sturges took possession of the cash, stocks, bonds, etc., of the firm and refused to yield these assets to the assignee. Immediately after the assignment Sturges began his endeavors to have the assignment canceled and for that purpose proceeded to obtain the signatures of the creditors to a paper, drawn of date November 20th, A. D. 1854, by the terms of which the subscribers agreed to a rescission and cancellation of the assignment, and that all the assets, effects and estates be restored and retransferred to the firm, and further granting an extension of time, not to exceed twelve months from the date of cancellation, to enable the firm to adjust and settle its business.

Ellis and Morton both subsequently joined Sturges in his endeavor to obtain the consent of creditors to this proposed arrangement. Sturges continued in the adjustment with creditors, and received from the assignee, from time to time, bills receivable, in exchange for other securities, to enable him to make settlements with particular creditors. In July, A. D. 1855, about two-thirds of the creditors having signed the agreement consenting to a cancellation, thereupon the assignee, at the request of Ellis and Sturges, agreed to cancel the assignment, upon being indemnified against any claim that might be made against him by the creditors of the firm. Accordingly, on July 7, A. D. 1855, the assignee entered into an agreement with both Ellis and Sturges, rescinding the assignments, and reconveying the property covered by them, except as to certain reservations therein made for indemnity to himself against the risks of the transaction. Among other things, the real estate conveyed by Ellis to Worthington was left in the control of Worthington, and the trusts of the original conveyance were so modified as to accord with the purposes for which he held certain other property, bonds, stocks, etc., in pursuance of said agreement conveyed to him, to-wit: "to secure, indemnify, protect, and keep harmless the said Vachel Worthington, his heirs, exec-

utors, and administrators, from all liability by reason of the cancellation of the said assignment and retransfer of the said assets and effects."

In the succeeding January the plaintiff instituted the present action to subject, among other things, the bonds, stock, real estate, etc., in the possession and control of Worthington, for his indemnity, to the satisfaction of his judgment againt the firm, claiming that the original assignment by Ellis, in the firm name, was invalid and of no effect, by reason of being made in the absence and against the protest of Sturges, and that, accordingly, the property held by Worthington was subject to attachment as the property of Ellis & Sturges; and also claiming that if the original assignment was valid, the assignee had no right to rescind it until the assets were fully administered.

On August 14, A. D. 1856, Ellis made a deed to Sturges, in which, after reciting that he and Sturges, composing the firm of Ellis & Sturges of Cincinnati, and Sturges & Ellis of New York, had that day agreed to dissolve said firms, and that all the property and assets of said firms, and all the property and assets of Ellis individually, saving and excepting certain family and household effects, together with all the rights and property of Ellis in the late firm of Ellis & Morton, were to be transferred and assigned to Sturges, to enable him to liquidate and discharge the liabilities of said firms, thereupon and for that purpose conveyed the same to Sturges.

On February 25, A. D. 1857, Sturges made an assignment to Aaron F. Perry of all the remaining assets of the firm of Ellis & Sturges, of Cincinnati, consisting of judgments, stocks, bonds, bills receivable, rights, claims, choses in action, and other value described in a schedule referred to, in trust to pay off the indebtedness of the firm of Ellis & Sturges.

Subsequently, on March 11, A. D. 1858, a supplementary assignment was made by Sturges to Perry, to cover an item previously omitted, consisting of a claim held by Sturges and the firm of Ellis & Sturges against Wm. R. Morton and

the firm of Ellis & Morton, for moneys paid by Ellis & Sturges for the firm of Ellis & Morton, and for damages for certain alleged deceptive statements on the part of Morton to Sturges, at the time. of the dissolution of the firm of Ellis & Morton, as to the financial condition of that firm.

On March 23, A. D. 1857, Perry, as assignee of Sturges, in order to obtain possession of the assets assigned to him, entered into a written agreement with Worthington, in pursuance of which Worthington transferred to Perry the assets originally assigned to him as indemnity by Ellis and Sturges, and by which Perry agreed " to hold and distribute the same as the said Vachel Worthington might lawfully be bound to distribute the same, or the proceeds thereof, and to such other uses as may be lawful, and to secure, protect, indemnify and keep harmless the said Worthington, his executors and administrators, against any claim of the said William Sturges or his creditors, or the creditors of the said Ellis & Sturges, or Rowland Ellis, to the extent and value of the assets so transferred."

*W. B. Probasco* for plaintiff.

*Taft & Perry* for Sturges and A. F. Perry.

*Fox & Fox* for estate of Morton.

*Worthington & Matthews* for Worthington.

STORER, J.   The decision of this cause, upon the facts before us, directly involves the validity and effect of the assignment made by Ellis, for himself and partner, to Worthington, and as this point is determined, the rights of the parties must mainly depend.

It is admitted by the pleading, and not denied by the evidence, that Ellis & Sturges were greatly embarrassed; the deposits made with them as bankers were very large, and the depositors had become anxious for the ultimate security

of their money, insomuch that there was not only much feeling excited, but violence even threatened and actually feared.  One of the partners was a resident of New York, against whom an order of attachment might have issued, and his interest, to say the least, in the property of the firm could have been seized, the immediate consequence of which would have worked a dissolution of the partnership, and a practical sequestration of its assets.

Under these circumstances Ellis, for the benefit of all their creditors, vested the trust in Worthington, and, so far as the condition of things then existing is to be regarded, we are satisfied the course he adopted was fair and just, demanded, even, by the interests of all concerned.

It has been seriously doubted, however, whether such a transfer of the partnership property by one member of the firm is obligatory upon the others.  We say doubted, as it seems to us that, upon principle, the authority assumed by Ellis may well be sustained, however hesitating the opinions of modern judges, where the effort has been in their adjudications, not so much to vindicate well established rules, and apply them to the daily necessities of business, but to trace distinctions between cases, to establish some new theory, whereby a particular action can be sustained or defeated.

There can be no doubt, but one partner could assign a portion of the joint effects in payment of the firm debts, or by way of security for antecedent debts, or debts to be afterward contracted.  Story on Part., sec. 101; Collyer on Part., sec. 395.  And Lord Mansfield held in *Fox* v. *Hanbury*, Cowper, 445, that even after an act of bankruptcy, by one partner, the solvent partner might *bona fide* assign the partnership effects to a creditor of the firm.

In *Harrison* v. *Sterry*, 5 Cranch, 289, the Supreme Court of the United States decided to the fullest extent, that the assignment of partnership property by one member of the firm, by an instrument under seal, in the name of the partnership, was valid, and transferred the right of each partner.

Indeed, the power to sell by each partner is essential to the existence of the partnership; without it the partners would be powerless; as they could no longer be the agents of their fellows, they would possess no other authority than that of individuals, and the anomaly would exist of a community of interest and a joint liability, and yet there be no power in those who mutually owned the property to dispose of it.

But, it is claimed, the power to transfer a portion of the partnership effects, will not authorize one partner to assign the whole for the benefit of the joint creditors; and, thus it was held, in 1 Dessausure, 537, *Dickinson* v. *Legare,* though there were peculiar circumstances in the case that might well have induced the decision, without reference to the point adjudicated. So in *Egberts* v. *Wood,* 3 Paige, 517; *Havens* v. *Hussey,* 5 Paige, 30; *Kirby* v. *Ingersoll,* 1 Harr. Mich. 172; same case in 1 Douglass, Mich. 477, which was affirmed by the majority of the court. In this last case the decisions upon the point were referred to and are examined by the judge who gave the opinion, and they are also referred to and examined by the judge who dissented, whose reasoning, it seems to us, is entitled to more respect than that of his colleagues. See also *Hayes* v. *Heyer,* 3 Sanford, S. C. 284; 1 Hoffman's Ch. 511, *Hitchcock et al.* v. *St. John; Mabbett* v. *White,* 2 Kernan, 451; *Dana, adm'r,* v. *Lull,* 17 Vermont, 390. In each of these cases it will be discovered that the judges place their opinions on some fact or incident connected with the subject submitted to them, as materially effecting their judgment; as, for instance, it is doubted whether it was not within the authority of the several partners to convey to a trustee, for the benefit of all the partnership creditors, in the absence or inability of the other partners to unite in the transfer, or the necessity for the immediate interference of the resident partner, to save the joint property for equal distribution.

On the other hand, the decision already quoted, of *Harrison* v. *Sterry,* the well-considered case of *Anderson* v. *Tompkins,* 1 Brock. 456, where Chief Justice Marshall, to our ap-

prehension, pronounces what is, in reality, the law; the opinion of Judge Johnson in *Robinson* v. *Crowder*, 4 McCord's Law Rep. 537, where he states the principle very clearly, and assumes "that every partial application of partnership funds for the payment of debts, whether it consists of cash, or goods, or anything else, is, in effect, an assignment for that purpose, and binds the firm; and if, in the course of things, a general assignment becomes necessary, there can be no reason why it should not be equally binding. The principle is the same, whether it be partial or total, and it follows that, in either case, one may bind the whole." The rule is also affirmed in 8 Leigh, 415, *McCullough* v. *Sommerville;* so in *Deckard* v. *Case*, 5 Watts, 22.

The law, we freely admit, remains unsettled, and we are left at liberty to determine the question upon general principles. We should have no hesitation to do so, under the circumstances of the case, were it necessary to a satisfactory solution of the point we have already stated as chiefly involved in this controversy.

If we should recognize the doctrine that would deny to one partner the right to assign the whole partnership effects, and such a transfer will not bind the other members of the firm, we are very fully satisfied that Sturges, with a full knowledge of all the facts connected with it, has ratified the act of Ellis by so many unequivocal evidences of his assent to the trust vested in Worthington, that he is estopped from denying the validity of the transfer; and the plaintiff is equally affected, for the creditors of the copartnership can claim no other or higher right than the individual partners. If the latter are precluded, so are the former.

*First*, It is in evidence that Sturges permitted the trust to continue in Worthington from November, 1854, to July, 1855, without any public denial of the right of the trustee to act—without any appeal to the legal tribunals to set aside the trust, or to enjoin its execution; all this, too, while the trustee had control of assets to the nominal amount of more than a million of dollars, which the interest

of both debtors and creditors demanded should be appropriated without delay. to the purpose contemplated by the assignment.

*Second,* That he has permitted the trustee to settle claims, receive payments of debts due to the partnership, deliver up securities, and aided the trustee to settle and arrange, for the benefit of the creditors, claims assigned by the deed of trust.

*Third,* That he withdrew from the trustee a portion of the assets assigned, and subsequently restored the value, thereby admitting the right of the trustee to control the partnership property.

*Fourth,* That during the period embraced within the dates referred to Sturges has compromised a large amount of the debts due by Ellis & Sturges, and claimed a credit for the same with the trustee.

*Fifth,* That he united with Ellis in a request to Worthington to relinquish the trust, consented to indemnify him against liability, consequent upon the re-transfer of the assets, allowing the expenses incident to the trust, and, in effect, receiving from the trustee himself the title under which he claimed the right to make a subsequent assignment to Mr. Perry.

Other facts are in proof tending also to produce the conviction to which we have arrived, that Sturges has ratified the act of his copartner, Ellis, and is, therefore, bound by the assignment made by him to Worthington; but we need not specially refer to them.

We hold, then, that the assignment to Worthington, taken in connection with the subsequent conduct of both partners, created an express trust, in behalf of their creditors, which bound the trustee to perform the several duties it imposed.

We suppose the assent of a party to an act done for his benefit, or which may injuriously even affect him, may always be presumed, if with a full knowledge of the thing done, he permits it to be applied to his benefit, or does not

disclaim it; and it will depend upon the nature of such transaction, what must be the degree of evidence to be required to authorize the implication. A man is never permitted to change his position, where it has assumed a positive character, and authorize the belief he intended it should represent what others might even suppose he did, and aver that he did not mislead, nor intend to mislead. He must be unequivocal and decided in his conduct; silence, even, may be equivalent to acquiescence, much more the exhibition of what has been termed "masterly inactivity."

On this hypothesis the statute of limitations depends for its vindication. He who has the right and does not assert it, is forever rebutted by his delay. It is the foundation, also, of estoppels *in pais*, which are applied in every case where a party who has once assumed a particular relation, attempts afterward to renounce it. He is never permitted to do so where the rights of others would be affected by his denial. " *Qui tacet, consentire videtur. Qui potest et debet vetare jubet.*" 1 Greenleaf Ev. secs. 196, 197.

Having accepted the trust, the trustee is never permitted afterward to renounce or repudiate the responsibilities of the office. Hill on Trustees, 219, 221; 4 Johns. Ch'y, 136, *Shepherd* v. *McEvers.*

But the *cestuis que* trust, the creditors, may assent to a renunciation of the trustee, and when it is expressly proved, or can be clearly implied from their acts, the trustee is discharged.

It follows, then, that all the creditors of Ellis & Sturges, who are not included within this definition, notwithstanding the re-assignment by Worthington to Sturges, have still a claim upon the trust property, and can require the trust to be executed for their benefit.

The plaintiff, as well as those whose interests have been consolidated with his, can not, therefore, obtain any preference in the distribution of the trust fund. We must see that the trust is administered for the benefit of all who are entitled to claim it.

Those creditors who have released the trustee, in express terms, must be postponed, to those who have declined to give their assent to his re-assignment; and as we are satisfied the trust still exists, the whole fund in the hands of Worthington, at the time he declined the trust, is still subject, in equity, to be charged, in the hands of Sturges, as well as of Perry, his assignee.

It must, therefore, be referred to a master, to examine into and report the state of the account between the trustee and the trust property—to ascertain the names of all the creditors of Ellis & Sturges who have not assented to the re-transfer to Sturges. The trustee will be protected, as it is very clear he has been careful of the interests of all confided to his care; and what he has done, has been in the exercise of a sound discretion, as well as perfect good faith. As the court have complete jurisdiction over the subject, they may permit Worthington to execute the trust, or take such other course, by the appointment of some other person in his stead, as it may deem proper. Whenever the report is filed, and the performance by Worthington of his trust shall be approved, he may, with propriety, be released from any future duty as trustee, and, by decree, protected from any liability subsequent to the time he renounced the trust. He can not be compelled to relinquish the securities deposited with him by Sturges, at the time he received the trust, until he is released by the creditors, or protected by our decree.

Another branch of this cause is submitted for our decision, which arises upon the answer and cross-bill of the executors of Wm. R. Morton, deceased, the former partner of Ellis, who withdrew from the firm when the partnership of Ellis & Sturges was formed. The peculiar features of this claim make it proper, we think, to require it to be docketed as a separate action under the section 119 of the code. We may thus examine the questions involved without the confusion that must otherwise result from connecting together the various interests in controversy.

The cross-bill contains many allegatiions, which are denied by the answers of Worthington, Sturges, and Perry. Ellis is in default.

It is claimed by Morton's executors that they, or the representatives of their estate, have a lien upon the real and personal property belonging to Ellis & Morton, at the dissolution of that firm, for all the partnership debts outstanding and unpaid; that there are large sums still due to the creditors of that firm, which ought, in equity, to be discharged by the assets transferred to Ellis & Sturges.

The terms upon which that co-partnership was dissolved required that all the debts due by Ellis & Morton should be paid by Ellis & Sturges, who assumed the same, and, it appears, agreed to protect Morton from future liability.

It is now contended that many of these debts are due, and Morton has been compelled to pay several judgments rendered against Ellis & Morton, for which Ellis & Sturges have made no provision; and, therefore, his estate ought to be subrogated to all the right of Ellis, in the assets transferred to Ellis & Sturges, excepting the cash on hand and notes discounted subsequently to the formation of the latter firm.

Before the true condition of the partnership, as it was when Morton withdrew, can be ascertained, there must be a reference to a master, and this is required, not only for the benefit of the estate of Morton, as well as of Ellis, but to vindicate the arrangement made between Ellis and Sturges for their subsequent connection in the business.

Very serious charges have been made against Morton by Sturges, the truth of which, in a great measure, depends upon the state of the affairs between Ellis and Morton, when Sturges became a partner. It is now claimed that Morton was guilty of fraudulent misrepresentation, which misled Sturges, and induced him to make the arrangement with Ellis; that the firm of Ellis & Morton was then actually insolvent, instead of each of the partners being entitled to any sum whatever, by way of profit or capital really invested. These allegations demand a full investigation; they should

not lightly be passed over, and we will, therefore, refer them, also, for full examination to the same master.

We are satisfied that all the claims still standing in the name of Ellis & Morton, and which were not assigned to Ellis when Morton withdrew, are subject still to the equities of the several partners and their representatives; but the notes, bills, and cash actually assigned to Ellis by Morton, and which afterward became the property of Ellis & Sturges in good faith, and for a consideration satisfactory to Morton, can not now be reached by the creditors of the former firm. The creditors of a co-partnership have no special lien upon the partnership property; whatever equity is allowed them is to be worked out through the right of the partners themselves, and it results from this principle, that where the separate partners have lost their lien, none can be saved to the creditor.

This lien may be lost, as it always is, when the joint property is sold in good faith to a third person, or when one partner retires from the firm, disposing, meanwhile, of his interest to the other partner, or to a third person, with his co-partner's consent, taking the assumption of his co-partner, or of a third person, to discharge all the firm debts. This rule was settled in *ex parte Ruffin,* 6 Ves. 125, affirmed in 11 Ves., 5, *ex parte Williams,* and is the established doctrine of the English courts. It is very fully and clearly explained by Judge Bigelow, in 9 Cushing, 556, recognized in *Wilcox et al.* v. *Kellogg et al.,* 11 Ohio, 399, and in the late case of *Miller* v. *Estill et al.,* 5 Ohio St. 508.

Morton's representatives must rely upon the agreement of Ellis & Sturges to pay the debts of Ellis & Morton, for their ultimate indemnity. We can not aid them when we find their testator had released his lien upon the partnership property by his sale to Sturges.